[Civ. No. 1477.   Second Appellate District.—April 22, 1914.]

LEON P. LOWE, Substituted for WILLIAM G. GAL-LAGHER, Appellant, v. LOS ANGELES SUBURBAN GAS COMPANY (a Corporation), et al., Defendants and Appellants; CAROLINE W. DOBBINS, Defendant, Cross-Complainant and Respondent; CALIFORNIA BANK (a Corporation), et al., Defendants and Respondents.

CORPORATIONS—ISSUANCE OF BONDS—IRREGULARITY IN CALLING MEETINGS—ESTOPPEL TO DENY VALIDITY OF BONDS.—Where a corporation has accepted and appropriated to its own use the full value of bonds which it has issued, it is estopped to attack the validity of the bonds on the ground that notices of meetings of the directors, at which the bonds were authorized, were not properly given.

ID.—ACTION ON BONDS—NECESSITY OF PLEADING ESTOPPEL.—In an action against the corporation to foreclose the trust-deed executed to secure the payment of such bonds, wherein the defense of want of authorization is interposed, the plaintiff may, without having pleaded such estoppel, introduce evidence to establish it; and the fact that at the trial the plaintiff, after establishing her *prima facie* case, introduces the other evidence in anticipation of the defense of want of authority, does not affect the merits of the case, nor change the rule applicable with respect to pleading.

ID.—IRREGULARITY IN BOND ISSUE—NOTICE TO AGENT—WHETHER IMPUTABLE TO PRINCIPAL.—The fact that a director of the corporation was the agent of the bondholder in purchasing the bonds, and hence had notice of irregularities in their issuance, did not impart notice to the bondholder nor preclude her from relying upon such estoppel; notice to him having come in his capacity as director rather than as agent.

ID.—ESTOPPEL AS TO BONDS—WHETHER EXTENDS TO MORTGAGE GIVEN TO SECURE THEM.—The estoppel in this case of the corporation to question the validity of the bonds extends to the trust-deed or mortgage executed to secure their payment; the bonds containing full recitals as to the execution of the trust-deed and the several instruments being all parts of one transaction.

ID.—TRUST-DEED—FAILURE OF TRUSTEE TO ACT—DUTY OF COURT TO PUT ITSELF IN HIS PLACE.—If such trust-deed provides that on default in payment of interest the principal should become due at the election of the trustee, and that, upon the holder of one-fourth of the bonds tendering satisfactory indemnity, the trustee shall take such action as the bondholder requests, the rights of the bondholder will not be allowed to fail by reason of the omission or refusal of the trustee to perform his duty, but the court will put itself in the place of the trustee, and, on demand of the bondholder, exercise its power to enforce those rights. The situation is one calling for the application of the maxim: "That which ought to have been done is to be regarded as done, in favor of him to whom, and against him from whom, performance is due."

ID.—RIGHT OF BONDHOLDERS TO ENFORCE TRUST-DEED WHERE TRUSTEE REFUSES TO PROCEED.—A provision in the trust-deed that no "bondholder or bondholders shall take any proceedings to enforce the provisions hereof, until he shall have requested the trustee in writing to take proceedings and shall have tendered to the trustee satisfactory indemnity as hereinbefore provided, and the trustee shall have refused or neglected after the lapse of a reasonable time to take such proceedings," is equivalent to a statement that after such a request and refusal the bondholders may proceed in some appropriate manner to enforce the provisions of the deed.

ID.—MEETING OF DIRECTORS—NOTICE—NECESSITY AND MANNER OF GIVING.—Section 320 of the Civil Code declares that when no provision is made in the by-laws of a corporation for regular meetings of the directors, all meetings must be called by special notice in writing, to be given to each director. Where the by-laws name the day for regular meetings, but do not name the hour of the day, notice must be given.

ID.—INTERESTED DIRECTOR—WHETHER MAY PARTICIPATE IN ACTION OF BOARD OR BE COUNTED AS PART OF QUORUM.—A director cannot participate in an action of the board of directors of a corporation authorizing a contract or the performance of an act for his own benefit, nor be counted as part of a quorum for the purposes of any such action by the board.

ID.—NOTICE OF DIRECTORS' MEETING—QUORUM—SUFFICIENCY OF EVIDENCE TO SHOW.—In this action to enforce a deed of trust exe-

cuted by a corporation to secure the payment of bonds issued by it, the evidence is sufficient to sustain the findings of the trial court that notices were given of the directors' meetings at which the bonds were issued and that quorums were present.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

Oscar A. Trippet, W. N. Goodwin, Schweitzer & Hutton, and John E. Biby, for Appellants.

Porter & Sutton, H. M. Barstow, Lynn Helm, and W. H. Chickering, for Respondents.

CONREY, P. J.—This action was filed by William G. Gallagher as plaintiff for the purpose of foreclosing upon a trust-deed alleged to have been executed by Los Angeles Suburban Gas Company, a corporation, to secure the payment of certain bonds alleged to have been executed by said corporation. Leon P. Lowe, having succeeded to such rights as the plaintiff possessed in the subject matter of the action, said Leon P. Lowe was substituted as plaintiff instead of William G. Gallagher. The defendant Caroline W. Dobbins filed a cross-complaint alleging ownership by her of one hundred bonds of the same issue, and prayed for foreclosure of the same trust-deed above mentioned. The court having determined that the Los Angeles Suburban Gas Company received no consideration for the bonds held by the plaintiff, and that it did receive consideration for those held by the cross-complainant, judgment was entered herein against the plaintiff and a decree of foreclosure in favor of the cross-complainant for the amounts due on said bonds. Appeals from the judgment and from an order denying a motion for new trial are now prosecuted by the plaintiff and by the defendants Los Angeles Suburban Gas Company, People's Gas Company, and the People's Gas & Coke Company.

On the second day of August, 1901, a certain contract was entered into between Los Angeles Safe Deposit & Trust Company, a corporation, party of the first part, T. S. C. Lowe, party of the second part, and Caroline W. Dobbins and Thad-

24 Cal. App.—24

deus Lowe, parties of the third part. By that contract Mrs. Dobbins and Thaddeus Lowe agreed to purchase land in the city of Los Angeles and erect thereon a gas and coke plant, and that afterward they would transfer said property to said Los Angeles Suburban Gas Company. In consideration of said property it was agreed, among other things, that there should be delivered to the said parties of the third part first mortgage bonds of said company equivalent in amount at par to the sums by them actually expended in the purchase of said land and construction of said plant. On the seventh day of November, 1901, and thereafter during the period of the transactions here under review, all of the stock of the Los Angeles Suburban Gas Company was owned by Los Angeles Safe Deposit & Trust Company, except that T. S. C. Lowe, L. P. Lowe, Thaddeus Lowe, S. C. Lowe, and Lynn Helm owned one share each, these five persons being the directors of the corporation. On November 7, 1901, there was held what purported to be a regular meeting of the board of directors, at which (according to the minutes) four directors were present, L. P. Lowe being absent. The by-laws of the corporation provided for regular meetings of the board of directors to be held on that day of the month, but did not specify the hour of the day. As hereinafter noted, it is claimed that no notice in writing of the holding of that meeting had been given to the directors. By resolution adopted at that meeting, it was ordered that a meeting of the stockholders be held at a specified hour on November 14, 1901, for the purpose of considering and authorizing a bonded indebtedness of the corporation in the sum of three hundred thousand dollars, and the said meeting of the board of directors was adjourned to meet immediately after said proposed meeting of stockholders. On November 14, 1901, there was held a purported meeting of the stockholders, which according to the minutes was at the place where the board of directors usually meet and pursuant to a call of the board of directors and by consent of the stockholders thereinafter set forth. The names of the stockholders thereinafter set forth were T. S. C. Lowe, Thaddeus Lowe, and Los Angeles Safe Deposit & Trust Company, and it was further recited that all of the stock of the company was represented (and that T. S. C. Lowe, L. P. Lowe, Thaddeus Lowe, and Lynn Helm were present) at the

meeting. A resolution was passed purporting to authorize the creation of said indebtedness and bonds in the sum of three hundred thousand dollars. Immediately after the adjournment of said stockholders' meeting the board of directors reassembled pursuant to adjournment, and the minutes show that all of the directors were present. At this meeting a resolution was offered and declared to have been adopted whereby, pursuant to said resolution of the meeting of the stockholders and consent of all of the stockholders, it was ordered that bonds in a form therein set forth be issued by the corporation representing said proposed indebtedness, and the California Bank of Los Angeles, California, was, by a separate resolution, selected and chosen trustee for the holder of said bonds and provision was therein made for the execution by the Los Angeles Suburban Gas Company to said California Bank of an instrument mortgaging the property of the corporation to secure the payment of said bonds. The trust-deed was executed in due form, and recorded on the twelfth day of February, 1903.

On the fourth day of December, 1902, according to the minutes of the Los Angeles Suburban Gas Company, at a regular meeting of the board of directors at which four directors were present and S. C. Lowe was absent, a resolution was offered by Thaddeus Lowe and seconded by L. P. Lowe, and was adopted, wherein recitals were made referring to said contract of August 2, 1901, and declaring that the parties of the third part of said contract had purchased certain real property in the city of Los Angeles and had erected on said premises a coke and gas plant complete in accordance with the terms of said contract, and had done certain other things therein mentioned and were now ready to convey to this company, or a party designated by it, the said land and coke and gas works, etc., and accept the bonds of this company therefor, and it was resolved that this company accept the conveyance from the said Caroline W. Dobbins and Thaddeus Lowe of said property therein mentioned and that the president and secretary of this company be authorized to deliver to said Caroline W. Dobbins and Thaddeus Lowe bonds as therein described, as authorized by this company on the fourteenth day of November, 1901.

On the twelfth day of February, 1903, there was filed with the clerk of the county of Los Angeles a purported certificate of creation of bonded indebtedness of the Los Angeles Suburban Gas Company, signed by T. S. C. Lowe as chairman and Lynn Helm as secretary of the stockholders' meeting before mentioned, and also signed by the above-mentioned five directors. A certified copy of the said certificate was also at about the same time filed in the office of the secretary of state. In April, 1903, Mrs. Dobbins executed and delivered to the Los Angeles Suburban Gas Company a deed in accordance with said contract, and a bill of sale was also executed and delivered by Mrs. Dobbins and Thaddeus Lowe to the same corporation covering certain other property, and thereby completing the performance of said contract of August 2, 1901, as to those matters on the part of the parties of the third part therein. Upon the evidence of these records, together with other records and testimony not necessary to state more extensively at this moment, the court found in favor of the cross-complainant upon the issues presented with respect to the allegation that the proceedings above noted were actual and valid proceedings of the corporation by its board of directors and by its stockholders and by its president and secretary respectively; and that said bonds being unpaid were valid obligations of the corporation secured by said mortgage or deed of trust, and that the cross-complainant was entitled to decree as entered herein.

It is contended by the defendants and appellants that the evidence is insufficient to support these findings.

L. P. Lowe testified that he was not present at the meeting of the board of directors on November 7, 1901, and S. C. Lowe testified that he was not present. As above noted, the minutes of the meeting show the absence of L. P. Lowe and the presence of S. C. Lowe. The certificate of creation of bonded indebtedness, which was signed, as above stated, by all of the directors, recites that the meeting was regularly called and held, and shows the presence of four directors, L. P. Lowe being absent. It, therefore, appears from the evidence, without any contradiction of the fact, that at this director's meeting at least one director was absent. The testimony of two directors that they did not receive any notice would be sufficient to show that no notice in writing had been given to the

directors of the holding of said meeting, unless we can say that the court was entitled to base a contrary finding upon the presumption that a meeting thus held was regularly called, and upon the recital in the certificate of bonded indebtedness that said meeting was "regularly called." If the purported meeting of November 7th was not a valid meeting of the board of directors, the same defect applies to the adjourned session of that meeting on November 14th, unless the court could base a contrary finding upon a like presumption as before and the recital in said certificate of bonded indebtedness that all of the directors of the company were present at the directors' meeting of November 14th. The principal point upon which the appellants are able to rely in support of their claim that a notice of the meeting was necessary grows out of the fact that the by-laws do not name the hour of the day upon which the meeting should be held. Section 320 of the Civil Code declares that "when no provision is made in the by-laws for regular meetings of the directors . . . all meetings must be called by special notice in writing, to be given to each director . . . " Where the by-laws name the day for regular meetings, but do not name the hour of the day, notice must be given. (*Thompson* v. *Williams,* 76 Cal. 154, [9 Am. St. Rep. 187, 18 Pac. 153] ; *San Buenaventura Mfg. Co.* v. *Vassault,* 50 Cal. 537.)

The meeting of stockholders on November 14, 1901, was held without the giving of notice to stockholders, and its validity must depend upon the showing either that it was held with the written consent of all of the stockholders, or that all of the stockholders were present. L. P. Lowe and S. C. Lowe testify that they did not sign the consent to holding said stockholders' meeting, that they had no notice of a stockholders' meeting being held at that time, and that they were not present. The minutes of that meeting recite that they were present, and the certificate of bonded indebtedness which they afterward signed recites that the meeting was held with their consent in writing. These two witnesses are not contradicted by the direct testimony of any witness.

The meeting of the board of directors on December 4, 1902, purporting to be a regular meeting of the board of directors, was held without showing by any record in the minutes the giving of any notice to the members of the board, and the

minutes show that one director (S. C. Lowe) was absent. L. P. Lowe also testified that he was not present at that meeting and his testimony is undisputed, except by the minutes of said meeting. If L. P. Lowe and S. C. Lowe were both absent, then there were only three directors present and no quorum could be present without counting Thaddeus Lowe as one of the three. The appellants contend that this fact destroys the validity of the resolution passed at that meeting directing the delivery of the bonds in question "to said Caroline W. Dobbins and Thaddeus Lowe." The rule is correctly stated by appellants that a director cannot participate in any action of the board of directors of a corporation authorizing a contract or the performance of an act for his own benefit, nor be counted as part of a quorum of the board for the purposes of any such action by the board. (*Wickersham* v. *Crittenden,* 93 Cal. 29, 30, [28 Pac. 788]; *Pacific Vinegar etc. Works* v. *Smith,* 145 Cal. 352, [104 Am. St. Rep. 42, 78 Pac. 550].) The said resolution cannot be accepted as any part of the authority for the delivery of said bonds, if Thaddeus Lowe was interested therein. It clearly appears, however, according to the testimony of Mrs. Dobbins, that although he was a party named with Mrs. Dobbins in the contract of August 2, 1901, yet in fact Mrs Dobbins with her own money paid the entire cost of the property that was conveyed to the Los Angeles Suburban Gas Company in consideration of these bonds, and the bonds were issued to her. In other words, the contract was so performed, as to consideration actually paid, that the bonds were the property of the cross-complainant alone. This is necessarily implied in the facts found and is sustained by the evidence.

The proceedings which were necessary for the creation of a bonded indebtedness by a corporation at the time of these transactions are contained in section 359 of the Civil Code, as amended in 1893. The form of these proceedings as conducted by the Los Angeles Suburban Gas Company and shown in its minutes and in said certificate is not objected to by appellants. The force of the objection is directed entirely against the validity of the meetings themselves and for the reasons which have been specified.

Assuming now, for the moment, that for want of proper notices the meetings of November 7 and November 14, 1901, were not legally called meetings of the corporation or of its

board of directors, we are met by the suggestion that the corporation is not entitled to take advantage of these defects and repudiate the bonds after having accepted and appropriated to its own uses full value thereof, paid out by the cross-complainant, for its benefit, and the proceeds delivered to it. The appellants deny that the deed and bill of sale above mentioned were delivered to the Los Angeles Suburban Gas Company. The trial court found as a fact that they were delivered, and although there is a conflict in the evidence, the finding is amply sustained by the testimony given. We therefore assume as a settled fact that the consideration was received.

In *McKee* v. *Title Insurance & Trust Co.*, 159 Cal. 206, 220, [113 Pac. 140], objection was made on behalf of the creditors of Wentworth Hotel Company, a corporation, that the requirements of section 359 of the Civil Code had not been complied with in the proceedings leading to the issuance of bonds of the corporation. The bonds had been issued without obtaining consent of two-thirds of the stockholders and without filing any certificate of creation of bonded indebtedness, and in fact no attempt had been made to comply with section 359 of the Civil Code; but the corporation had received a valuable consideration for the bonds. The court, after stating that a construction which would make such bonds void in the hands of a holder for value at the instance of other creditors, would be against equity and justice and should not be favored, called attention to the fact that in section 359 there is no provision that bonds not issued in conformity therewith shall be void either in favor of creditors or at all. "So far as such original issue is concerned, the proceedings were evidently intended only as a protection to the stockholders against such issue without the consent of those having a two-thirds interest, and not for the protection of creditors. No stockholder is here asserting any right, or making any objection. The assignee in insolvency represents the interests of the creditors only. He is not suing on behalf of the stockholders or in their interest, and, there being no fraud, he stands in the shoes of the corporation with regard to the bonds. The corporation has received the money obtained by means of the bonds and has applied it to the payment of its debts and the completion of the hotel. The money has thus inured to the benefit of the corporation and its stockholders and of the general creditors

also, since it has unquestionably given a substantial value to a structure which would otherwise be comparatively worthless. The corporation is therefore estopped to dispute the validity of the bonds and the creditors are likewise bound thereby. The real point of the objection is that the manner of issuing the bonds was so defective that the transaction was *ultra vires,* and void, notwithstanding that the corporation received and holds the benefits thereof. In regard to a similar claim the New York court of appeals said: 'That kind of plunder which holds on to the property but pleads *ultra vires* against the obligation to pay for it, has no recognition or support in the laws of this state.' (*Seymour* v. *Spring Forest Cemetery Association,* 144 N. Y. 333, [39 N. E. 365, 26 L. R. A. 859].) The following cases declare that neither the corporation nor its creditors can, under like circumstances to those here existing and under similar provisions of the law, maintain such an attack on bonds irregularly issued, and that the provisions of such laws are for the protection of stockholders only." (Citing cases.)

Appellants offer two principal reasons why they say that the cross-complainant cannot rely upon an estoppel in this case. The first objection is that no estoppel was pleaded by the cross-complaint. At the trial cross-complainant introduced evidence sufficient to establish a *prima facie* case. If she had rested there, and if the defendants here appealing had then introduced evidence showing lack of due authorization, the cross-complainant might then have presented evidence to raise an equitable barrier against defendants' proof of want of authority, and might have done this without pleading an estoppel. The fact that in the trial of this case the plaintiff, after establishing her *prima facie* case, introduced the other evidence in anticipation of the defense of want of authority, does not affect the merits of the case, nor change the rule applicable with respect to pleading. (*Blood* v. *La Serena L. & W. Co.,* 113 Cal. 221, 229, [41 Pac. 1017, 45 Pac. 252].) Next it is asserted that estoppel cannot be relied upon because deceit is an essential element in estoppel and the cross-complainant had actual notice of the fact that, as appellants claim, the execution of said bonds was never duly authorized. The record shows that Thaddeus Lowe was the agent of cross-complainant with respect to the business transacted under said

contract of August 2, 1901. At the same time he was a director of the corporation. Personally, Mrs. Dobbins did not acquire any knowledge of the details of action or attempted action by the corporation. Under such circumstances, it would not be equitable to enforce against cross-complainant the consequences resulting from the legal rule that knowledge on the part of her agent is to be imputed to her as his principal. The scope of his agency seems to have been extended only to the business of assisting her in the performance of her part of the contract wherein she purchased lands and improved the same and conveyed the property to the corporation. His presence at the meetings of the board of directors and of the stockholders of the corporation was in his capacity as a stockholder or as a member of the board of directors and charged with a trust in favor of the corporation. If under those circumstances the corporation accepted a valuable consideration from her and secured her acceptance of its bonds, the directors of the corporation must be presumed to have known of the alleged invalidity of those proceedings, and the knowledge of Thaddeus Lowe was primarily his knowledge as such director. If under such circumstances he concealed the facts from his principal, Mrs. Dobbins, his other principal (the Los Angeles Suburban Gas Company) should not be permitted to take advantage of that concealment. This position is further established by the fact that the corporation, by the act of all of its directors, including Thaddeus Lowe, certified to the facts relied upon by Mrs. Dobbins when she accepted the bonds and delivered the consideration therefor.

We now return to the matter of the notices given, and the question of validity of the meetings held. The finding of fact, that there was a stockholders' meeting, and that there were directors' meetings, at the times above mentioned, implies that notice in writing had been given of the directors' meetings, and that written consent had been given by all of the stockholders for the holding of the stockholders' meeting. In our opinion, the court was entitled to find that these notices were given. Beginning with the presumption of regularity of the proceedings shown in the minutes kept by the secretary of the corporation, the court was not bound to believe contrary testimony of the witnesses L. P. Lowe and S. C. Lowe, in the face of their own written certificate which contradicted their testi-

mony.   There being thus a conflict in the evidence, we base
our conclusion upon the facts as found by the court.   A like
result must follow upon the question as to the number of
directors present at the directors' meeting of December 4,
1902.   On the one hand we have the official record of the cor-
poration in its minutes, which show the presence of four di-
rectors, as against the testimony of one of those four directors,
given nine years later, that he was not present at the meeting.
. We find no merit in the suggestion that the estoppel, even
if good against the bonds, cannot be relied upon to sustain the
validity of the trust-deed or mortgage.   The bonds contain
full recitals showing the execution and recording of the "mort-
gage and trust-deed," and the documents are all equally a part
of the transaction.

Finally, it is claimed by appellants that the decree entered
herein is erroneous in this, that it orders that the mortgaged
property be sold for satisfaction of the principal, as well as
for the due and unpaid interest upon the bonds.   This argu-
ment is based upon the provisions of the trust-deed that if for
a specified length of time default be made in the payment of
interest coupons, the whole amount of the principal, etc., shall,
at the election of the trustee, be deemed immediately due and
payable; and since the trustee has never made such election
and has never instituted any proceeding to foreclose, it is in-
sisted that the remedy of the holder of the bonds is limited
to the right to have the property, or so much of it, sold as
is required for the satisfaction of accrued and unpaid interest
installments.   If the trust-deed contained no other provision
for advancing the maturity of the entire obligation than that
above mentioned, the contention of appellants probably would
have to be sustained.   But it further appears from the mort-
gage that, under circumstances like those which have arisen in
this case and after the holder of one-fourth of the bonds at
that time outstanding and unpaid shall have tendered to the
trustee satisfactory indemnity against loss, expense, and liabil-
ity that may be incurred by it in so doing, it shall be the duty
of the trustee to take such action pursuant to the terms of the
trust-deed as the party or parties tendering the indemnity may
in writing request.   After the default had taken place and the
necessary space of time had passed, the cross-complainant,
she being the holder of all of the legally outstanding bonds of

this issue, made written demand upon the trustee that it immediately elect to consider the whole amount of principal and interest of said bonds to be due and payable and that it institute proper proceedings to foreclose said mortgage or deed of trust, or to sell the property thereby conveyed or mortgaged, under the power of sale therein contained, and in said writing offered to protect and indemnify the trustee in such manner as it might require against loss, expense, and damage by reason of such foreclosure and sale. The trustee indorsed on said notice a refusal to comply with the demand and request thus made. Under these circumstances, the rights of the bondholder should not be allowed to fail by reason of the refusal or omission of the trustee to perform its duty. The court should put itself in the place of the trustee and, on demand of the bondholder, should exercise its power to enforce those rights. The situation is one calling for the application of the maxim, ''That which ought to have been done is to be regarded as done, in favor of him to whom, and against him from whom, performance is due.'' (Civ. Code, sec. 3529; *Beverly* v. *Blackwood,* 102 Cal. 83, [36 Pac. 379]; *Cutter* v. *Burroughs,* 100 Me. 379, 387, [61 Atl. 767].)

With respect to the plaintiff in the case, the evidence is sufficient to sustain the finding that the Los Angeles Suburban Gas Company received no consideration for the bonds held by the plaintiff. The only evidence tending to show a consideration came in the form of statements by the witness L. P. Lowe. whose cross-examination showed that the facts were not within his personal knowledge, and the court very properly struck out the answers thus given. There is other evidence indicating absence of any consideration.

The judgment and the order denying the motions of appellants for a new trial herein are affirmed.

James, J., and Shaw, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on May 22, 1914, and the following opinion then rendered thereon:

THE COURT.—The appellants Los Angeles Suburban Gas Company, People's Gas Company, and People's Gas & Coke

Company have filed their petition for a rehearing of this cause in the second district court of appeal.

The argument presented relates to that part of the decree of foreclosure which permits a sale to enforce payment of the principal of the bonds as well as the accrued interest thereon. In addition to the fact that (under circumstances outlined in the opinion heretofore filed) the trust-deed made it the trustee's duty "to take such action pursuant to the terms of this trust-deed as the party or parties tendering the indemnity may in writing request," we find that paragraph XII of the trust-deed provides as follows: "No bondholder or bondholders shall take any proceedings to enforce the provisions hereof until he shall have requested the trustee in writing to take proceedings and shall have tendered to the trustee satisfactory indemnity as hereinbefore provided, and the trustee shall have refused or neglected after the lapse of a reasonable time to take such proceedings." The words above quoted are equivalent to a statement that after such request and refusal the bondholders referred to may proceed in some appropriate manner to enforce the provisions of the trust-deed. We think that the right to enforce the provisions of the trust-deed included the right to enforce payment of the entire debt and that this right passed to the bondholders complying with the conditions stated when the trustee refused to proceed as requested.

The petition for rehearing is denied.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 19, 1914.