## BARKER v. UTAH-IDAHO CENT. R. CO.

No. 3456.   Decided February 4, 1921.   (195 Pac. 635.)

RAILROADS—COUPON NOTES HELD SECURED BY TRUST INDENTURE, AND SO ENFORCEABLE ONLY BY FORECLOSURE. Convertible improvement notes of a railroad company, together with attached interest coupons, *held*, in view of trust agreement therein referred to, secured by trust indenture referred to in the agreement, so that under Comp. Laws 1917, § 7230, as well as by provision of the indenture, the debt evidenced by the coupons could be enforced only by foreclosure proceedings.[1]

Appeal from District Court, Second District, Weber County; *A. W. Agee*, Judge.

Action by George Barker against the Utah-Idaho Central Railroad Company. Judgment for plaintiff, and defendant appeals.

REVERSED and REMANDED.

*De Vine, Stine & Gwilliam* and *J. D. Murphy*, all of Ogden, for appellant.

*John G. Willis*, of Ogden, for respondent.

---

[1] *Boucofski* v. *Jacobsen*, 36 Utah, 165, 104 Pac. 117, 26 L. R. A. (N. S.) 898; *Coburn* v. *Bartholomew*, 50 Utah, 566, 167 Pac. 1156.

CORFMAN, C. J.

Plaintiff commenced this action against the defendant in the district court of Weber county to recover the amount alleged to be due and owing on certain interest coupon notes.

It appears that on the 2d day of July, 1918, the defendant, a railroad corporation, was known and designated by name as the Ogden, Logan & Idaho Railway Company, and on said date in its then name made, executed and delivered 10 certain "six per cent. convertible improvement notes," numbered M. 168 to M. 177, inclusive, for $1,000 each, payable on the 2d day of January, 1921, with interest thereon at the rate of 6 per cent. per annum, payable semiannually on the 2d days of January and July of each year, as evidenced by interest coupons thereto attached, of which were the coupons sued upon by the plaintiff in this action, and in form as illustrative thereof, the following:

"Ogden, Logan & Idaho Railway Company.   $30.

"Will pay to the bearer on the 2d day of January, 1918, at the Ogden Savings Bank, at Ogden, Utah, thirty dollars in gold coin of the United States of America, being six months interest due on its six per cent. convertible improvement note.

"No. M. ——.   (Serial Number.)

"$30.                                    Royal Eccles, Secretary."

It is alleged by the complaint that the plaintiff is the owner and holder of 30 of said interest coupons for $30 each, 10 of which were payable January 2, 1918, 10 July 2, 1918, and 10 January 2, 1919; that each of the coupons was duly presented, after becoming due, to said Ogden Savings Bank, but that the respective sums due thereon have not been paid, nor any part thereof. Judgment for the several amounts of the interest coupons, together with interest thereon at the legal rate for their respective due dates, was prayed for by plaintiff.

In substance, and in so far as may be pertinent to the questions raised on this appeal, the answer admitted the execution and delivery of the 10 convertible improvement notes, together with the 30 interest coupons attached thereto, but denied, on information and belief, that the plaintiff was the

496        SUPREME COURT OF UTAH        [Feb.

Barker v. Utah-Idaho Cent. R. Co., 57 Utah 494

owner and holder thereof, or that the coupons were presented for payment, or that they had not been paid. Attached to and made a part of the answer was a copy of one of the convertible improvement $1,000 notes, as illustrative of the 10 notes, and which in part is as follows:

"Number ——.                                M. ——.    (Serial.)
                  "United States of America,
                      "State of Utah.
             "Ogden, Logan & Idaho Railway Company.
          "Six Per Cent. Convertible Improvement Note,
                   "Due January 2, 1921.
                "Total Issue, Two Million Dollars.

"The Ogden, Logan & Idaho Railway Company, for value received, hereby promises to pay to the bearer hereof one thousand dollars ($1,000.00) in gold coin of the United States of America, or equal to the present standard of weight and fineness, on or before the 2d day of January, 1921, at the Ogden Savings Bank in the city of Ogden, county of Weber, state of Utah, and to pay interest thereon from the 2d day of July, 1916, at the rate of six per cent. (6%) per annum, at said place of payment, in like gold coin semiannually on the 2d day of July and the 2d day of January in each year upon presentation and surrender of the annexed interest coupons as they shall respectively mature.   *   *   *

"This note is one of a series of coupon convertible improvement notes aggregating two million of dollars face value of principal known as the 'six per cent. convertible improvement notes' of the Ogden, Logan & Idaho Railway Company, issued and to be issued under a trust agreement dated the 2d day of July, 1918, between the Ogden, Logan & Idaho Railway Company and the Ogden Savings Bank of Ogden, Utah, as trustee.

"For description of the nature and extent of the security, the rights of the holders of said improvement notes and the terms and conditions upon which the same are issued, reference is hereby made to the said trust agreement.

"This note is subject to redemption at par and accrued interest at the option of the Ogden, Logan & Idaho Railway Company on January 2, 1917, or any subsequent interest day, on thirty (30) days' notice, as provided in said trust agreement, and may, at the option of the Ogden, Logan & Idaho Railway Company be converted into Ogden, Logan & Idaho Railway Company first mortgage gold bonds, issued or which may be issued under the provisions of section 4 and section 5 of article 1 of the trust indenture securing said gold bonds at the par value of said bonds, which said bonds are pledged under the provisions of said trust

agreement as collateral to secure the payment of the principal sum herein."

It was further alleged in the answer as an affirmative defense that the plaintiff, in receiving the convertible notes with the interest coupons attached, accepted the provisions of the trust agreement therein mentioned and referred to, and also the provisions of a certain trust deed or indenture, copies of which were attached to and made a part of the answer; that by the acceptance of said notes, likewise, the provisions of the trust agreement and also of said trust indenture were accepted, and that the plaintiff thereby waived his right to and is estopped from any procedure for the collection of the amounts due upon the interest coupons other than that provided for in said trust agreement and in said trust indenture.

Section 12 of article 4 of the said trust indenture with respect to plaintiff's right of procedure, contains the following provisions, to wit:

"No holder of any bond or coupon secured thereby shall have any right to institute any suit, action or proceeding in equity or at law for the foreclosure of this indenture, or for the execution of any trust hereof, or for the appointment of a receiver, or for any other remedy hereunder, unless such holder shall previously have given to the trustee written notice of such default and of the continuance thereof as hereinbefore provided; nor unless, also, the holders of one-fourth in amount of the bonds hereby secured then outstanding shall have made written request upon the trustee, and shall have offered to it a reasonable opportunity, either to proceed to exercise the powers hereinbefore granted, or to institute such action, suit or proceeding, in its own name (and the trustee shall have refused or unreasonably delayed to comply with such request); nor unless, also, they or some one or more of the holders of said bonds, shall have offered to the trustee security and indemnity to the satisfaction of the trustee against the costs, expenses and liabilities to be incurred therein or thereby, and such notification, request and offer of indemnity are hereby declared in every such case, at the option of the trustee, to be conditions precedent to the execution of the powers and trusts of this indenture for the benefit of the bondholders, and to any action or cause of action for foreclosure, or for the appointment of a receiver, or for any other remedy hereunder, it being understood and intended that no one or more holders of bonds and coupons shall have any right in any manner whatever

by his or their action to affect, disturb or prejudice the lien of this indenture, or to enforce any right hereunder, except in the manner herein provided, and that all proceedings at law or in equity shall be instituted, had and maintained in the manner herein provided, and for the equal benefit of all holders of such outstanding bonds and coupons."

It was also alleged by the answer that the plaintiff, on or about the month of December, 1918, caused a notice to be served upon the trustee mentioned in the said trust agreement purporting to be in accordance with said section 12, article 4, of said trust indenture, notifying said trustee to proceed to collect the amounts then due on said interest coupons, but other than that the plaintiff has wholly failed to take the steps necessary to comply with any of the terms and conditions of either said trust agreement or trust indenture, and therefore plaintiff is precluded from a recovery in the present action.

The plaintiff demurred to the answer upon the grounds that the matters therein alleged did not state facts sufficient to constitute a defense to the cause of action set forth in the complaint. The demurrer was sustained by the district court, and, upon the defendant failing to amend its answer or to further plead, the cause came on for trial without a jury, the defendant not appearing. The trial court, under the evidence adduced by plaintiff, found the issues in plaintiff's favor, and rendered judgment accordingly for the amount due on the coupons, with interest thereon.

The defendant appeals and assigns as errors the ruling of the court sustaining plaintiff's demurrer to the answer and in finding for and rendering judgment in plaintiff's favor.

The theory of defendant's defense was, as is shown by the pleadings referred to, that the interest coupons sued upon by the plaintiff were only a part of the convertible notes and partook of the nature thereof; that the convertible notes, with respect to the rights of the holders thereof, contain a direct reference to the trust agreement, which agreement makes a further reference to the trust indenture wherein it was prescribed that upon non-payment of the notes, including the interest coupons, the enforcement of collection does not

repose in the holder of the notes or coupons until after the provisions of the trust indenture are complied with, and further, that the debts sued upon are secured by the aforesaid trust indenture, and therefore unenforceable except by the usual foreclosure proceedings provided for in Comp. Laws Utah 1917, § 7230, and by making all persons interested parties to the suit as provided by Comp. Laws Utah 1917, §§ 6506, 6507:

Undoubtedly, if under the provisions of our statute (Comp. Laws Utah 1917, §§ 7230, 7231) as interpreted by this court in *Boucofski* v. *Jacobsen,* 36 Utah, 165, 104 Pac. 117, 26 L. R. A. (N. S.) 898, and *Coburn* v. *Bartholomew,* 50 Utah, 566, 167 Pac. 1156, the debts sued upon in this action were secured by the trust indenture pleaded by defendant's answer the sustaining of the plaintiff's demurrer to the answer was reversible error. The plaintiff contends that the coupons sued upon were not so secured. Conceding, as may well be done, that the improvement notes and the interest coupons thereto attached constituted, in legal effect, but one instrument, and that they may not be segregated in the determination of the rights of the holder when proceeding, after their maturity, to enforce their collection, yet there remains the question whether or not the coupons sued upon were in fact secured by the trust agreement and trust indenture pleaded and relied upon in defendant's answer as a defense. It has been observed that the trust indenture, made a part of the answer and relied upon by the defendant as a defense, was executed on the 2d day of January, 1915, three years and six months before the execution and delivery of the convertible notes and their coupons. July 2, 1916, one year and six months after the execution of the trust indenture, the trust agreement was executed. The convertible notes and their coupons were executed and delivered, as pointed out, July 2, 1918. They provide, as has been seen, that—

They are "one of the series of coupon convertible improvement notes * * * issued and to be issued under a trust agreement dated the 2d day of July, 1916, between the Ogden, Logan & Idaho Railway Company and the Ogden Savings Bank of Ogden, Utah, as trustee. For description of the nature and extent of the

security, the rights of the holders of said improvement notes and the terms and conditions upon which the same are issued, reference is hereby made to the said trust agreement."

Passing to the trust agreement referred to in the convertible notes, we find embodied in its provisions a resolution passed by a majority of the stockholders of the Ogden, Logan & Idaho Railway Company, authorizing the execution and delivery of the trust agreement which provided for the execution and delivery of the convertible notes with interest coupons attached, and also providing for and authorizing the delivery of the trust agreement "to secure the payment of said notes and interest thereon," and, further, to wit, "defining the obligations of the company in respect to said notes, and pledging the company not to issue any of the bonds of the company under the trust indenture securing the same for the purposes set forth in said trust indenture only until the said convertible notes shall have been paid in full or converted into bonds as in the manner the trust agreement defining and providing for the issuance of said notes shall be stated." The trust agreement, after recitals of due authorization for the execution and delivery of the convertible notes in form prescribed, then proceeds to set forth its purpose, and defines the defendant's obligations with respect to said notes in the following language:

"Now, therefore, in order to define the obligations of the company in relation to said notes, and to secure and hold in abeyance the issuance of any further first mortgage gold bonds of the company, except for the purpose of retirement of the notes referred to in this agreement, and to secure the payment of the principal and interest of all notes of the company at any time issued and outstanding under this agreement, or the conversion of said notes into first mortgage gold bonds of the company, all in accordance with the tenor, purport and effect of said notes, * * * and in consideration of the premises and of the purchase and acceptance of such notes by the holders thereof, and of the sum of one dollar to it duly paid by the trustee at or upon the ensealing and delivery of the presents, the receipt whereof is hereby acknowledged, said Ogden, Logan & Idaho Railway Company hereby covenants to and with the said Ogden Savings Bank, as trustee, and its representative successors in the trust hereby created, as follows, to wit."

The trust agreement then proceeds to provide for the execution and delivery of the notes under certain restrictions, not material here, up to $2,000,000. Then follows this covenant:

"The company covenants to and with the trustee, for the benefit of the owners and holders of the first one million dollars ($1,000,000) of said notes, that all bonds which may hereafter be issued under and in accordance with the provisions of section 4 of article 1, and the first two hundred and fifty thousand dollars ($250,000) par value of bonds which may be applied for under the provisions of section 5 of article 1 of that certain trust indenture, dated January 2, 1915, executed by the company to the Ogden Savings Bank as trustee securing the first mortgage gold bonds of the company, shall be only issued by the company for the purpose of retiring and paying for the one million dollars ($1,000,000) par value of notes to be issued under the provisions of this agreement" in which were included all the convertible notes of the plaintiff.

It is then further provided by the trust agreement that the provisions of the trust indenture with respect to the manner of issuance, registry, and certification of the notes, in so far as applicable, are made a part and shall govern and control the issuance of the notes.

From the provisions of the trust agreement above mentioned and referred to, we think it is made sufficiently clear and explicit that the convertible notes are secured by the trust indenture, and also that the method of procedure as in said trust indenture prescribed in cases of nonpayment of interest-bearing gold bonds applies to the convertible notes, and was made a matter of contract between the maker of the notes and the holders thereof.

Space will not permit, and it is not at all necessary in this opinion, to set forth in detail, or even to refer to all of the provisions of the trust indenture bearing upon the question of procedure for the enforcement of the right of the holders of the interest-bearing obligations of the defendant in cases of nonpayment. Suffice it to say, that the trust indenture was made to secure the payment of the defendant's bonds and interest-bearing obligations issued and to be issued thereunder by the defendant after its execution and delivery, ac-

cording to the provisions thereof. With regard to procedure in cases of nonpayment, section 12 of article 4 of said trust indenture heretofore set forth provides the course to be taken by the holders of the convertible notes in cases of nonpayment, and it is sufficient to say that the answer of the defendant alleged noncompliance therewith, and also that the debt sued upon was secured by the trust indenture. Therefore the district court erred in sustaining plaintiff's demurrer to the answer and in rendering judgment in his favor.

The judgment of the district court, for the reasons stated, is reversed, vacated, and set aside, and the cause remanded to said court, with instructions to proceed with the case in accordance with the views herein expressed. Appellant to recover costs.

WEBER, GIDEON, THURMAN and FRICK, JJ., concur.