THE FLORIDA NATIONAL BANK OF JACKSONVILLE, as Trustee, etc., *et al.,* v. JEFFERSON STANDARD LIFE INSURANCE COMPANY.

167 So. 378.

Opinion Filed March 30, 1936.

Rehearing Denied April 28, 1936.

526

*J. W. Harrell* and *W. P. Dineen,* for Appellants;

*Rogers, Hazard & Thames,* for Appellee.

DAVIS, J.—From an interlocutory order denying appellants' motion to dismiss a bill of complaint filed by a corporate mortgage bond coupon holder to foreclose the mortgage for the payment of certain of the mortgage bond coupons that had been assigned to it, the movants (defendants below) have appealed to this Court for reversal.

The bill of complaint filed August 7, 1934, shows the following: That on November 1, 1919, the Florida Fair and Exposition Association, Inc., a corporation, executed and delivered to The American Trust Comany, as trustee, its mortgage and deed of trust encumbering its real estate at Jacksonville, Florida, to secure payment of a corporate mortgage bond issue aggregating $150,000.00, all to become due January 1, 1935, drawing interest at the rate of seven per cent. per annum, evidenced by coupon notes attached to the mortgage bonds, which coupons are by the terms of the instruments involved, negotiable by delivery; that the complainant below, Jefferson Standard Life Insurance Company, a corporation, is the *bona fide* owner and holder of $2,-408.00 of said coupons that passed into the hands of complainant's assignor, for a valuable consideration, prior to maturity of the bonds to which they had been annexed; that the Florida National Bank of Jacksonville, a corporation, has been and is a substituted trustee under the mortgage, for The American Trust Company; that said substituted trustee has failed and refused to execute the trust devolving upon it as such substituted trustee, and on the contrary has acquiesced in allowing other claimants against the mortgagor to reduce their claims to judgment against said Florida Fair and Exposition Association and has allowed said mortgagor, Florida Fair and Exposition Association, Inc., to wrongfully and illegally misapply and divert from the payment of interest in default on the mortgage bonds, several thousand dollars out of the income of the defendant, since March, 1928; that the action of the said substituted trustee in acquiescing in, or permitting, the defaults complained of, and in failing to take possession of and protect the mortgaged property as authorized by the mortgage trust deed, has necessitated the complainant to file a bill for fore-

closure of the mortgage for the collection of its interest coupons, to secure which the mortgage in terms creates a lien, and that the Court should allow complainant as a coupon holder to maintain said foreclosure and have other appropriate relief incident thereto, such as a receiver, accounting, costs, attorney's fees and a sale of the mortgaged property to satisfy the complainant's demands.

The question raised by the motion of defendants below to dismiss the bill is whether or not the facts alleged in the bill of complaint make out a case entitling the mortgage bond coupon holder to foreclose the mortgage and trust deed for collection of its coupons, when taken in conjunction with the provisions of the trust deed that specifically deny the right of any bond or coupon holder secured thereby, to institute foreclosure proceedings without first giving notice in writing to the trustee, of the mortgagor's default, and unless the holders of 25% in amount of the bonds have first notified and requested in writing the Trustee to foreclose the mortgage within a reasonable time after such notice, and without offering to indemnify the Trustee against costs and liabilities to be incurred, as provided in the mortgage to be done to entitle a bond or coupon holder to thus sue.

The mortgage deed sued upon, which is attached to and made a part of the bill of complaint, contained the following provisions that are pertinent to a determination of the present controversy with respect to the question of law just propounded:

"Twelfth. Until the concurrence of one of the acts of default specified in this indenture The Company, its successors and assigns, shall be suffered and permitted to retain actual possession of all the premises and properties hereby mortgaged and to manage, operate and use the same and every part thereof, with the rights and franchise apper-

taining thereto, and to collect, receive, take, use and enjoy the tolls, earnings, incomes, rents, issues and profits thereof. * * *

"If default be made by said Company in the payment of any of the interest on any of the said bonds according to the tenor and effect thereof on the presentation of the said coupons respectively, or if said Company shall fail faithfully to observe any obligation or perform any covenant required of it by these presents and such default shall continue for the space of sixty (60) days after demand in writing, then in the discretion of The American Trust Company, Trustee, it shall be lawful for said The American Trust Company, Trustee, and upon request in writing of the holders of not less than twenty-five per cent. (25%) of the bonds hereby secured then outstanding, it shall be the duty of The American Trust Company, Trustee, to declare the whole of the principal of said bonds then outstanding together with all accrued and unpaid interest thereon, at once due and payable and thereupon the principal of the said bonds then outstanding, together with all accrued and unpaid interest thereon, shall at once become due and payable.

"THIRTEENTH. In case of Sixty (60) days default being made as aforesaid, and not being waived, as hereinafter provided, or in case of default in the payment of the principal of any of said bonds at maturity, the Trustee hereunder shall be entitled to immediate possession of all of said property as for condition broken, and to receive and collect the rents, issues and profits thereof, and if the party of the first part, its successors and assigns, shall thereafter remain in possession of said property, it or they shall be deemed, and shall be tenant at will of the Trustee, and shall at once surrender and yield up such possession on demand to it and the said The American Trust Company, Trustee, may there-

upon enter and take possession and collect the rents, issues and profits of said property and apply the same less a reasonable compensation to the said Trustee for its said services to be reserved therefrom, towards the repairing of said property, and the payment of insurance and taxes and assessments thereon, and other expenses of this trust, and expenses of the management of said property, if any, and to the payment of interest and principal of said bonds and upon the failure or refusal to surrender and yield up such possession, said The American Trust Company, Trustee, may at its option, obtain such possession forcibly or otherwise with or without process of law.

"FOURTEENTH. In case of sixty days default being made, as aforesaid, and not waived as hereinafter provided, or in case of default in the payment of the principal of any of said bonds at maturity, the said The American Trust Company, Trustee, may, and upon request in writing of the holder of not less than twenty-five (25%) per cent. of the bonds hereby secured then outstanding, it shall file a bill in any court having jurisdiction thereof, against the party of the first part, its successors or assigns, and all other proper parties, to secure the specific performance of the covenants and agreements of this instrument or to obtain a decree for the sale and conveyance of the whole or any part of the said premises and property, for the purposes herein specified, or said The American Trust Company, Trustee, may institute and carry out any other proceedings authorized by law for the foreclosure of this deed, or the sale of the said property, or the enforcement of said debt, or for any other appropriate legal or equitable relief and out of the proceeds of any foreclosure sale or other proceedings may pay the costs of such suit, all costs of advertising, sale and conveyance, including a reasonable sum for attorney's fees, solici-

tor's fees and Trustee's fees hereunder and in the enforcement thereof and also all advances and liabilities made or incurred under the provisions of this Trust Deed, including advances for abstracts of title or for continuations thereof, and all other expenses and charges of this trust, including all moneys advanced for insurance, taxes or other liens or assessments, with interest thereon at the highest rate allowed by the law and shall then pay the principal of the bonds then outstanding and unpaid whether due and payable by the terms thereof or under any other provision of this Trust Deed and the interest thereon up to the time of such payment, rendering the overplus, if any, upon the said party of the first part, its successors or assigns, upon reasonable request; and it shall not be obligatory upon the purchaser or purchasers at any sale under the provisions of this trust deed to see to the application of the purchase money. In case of the filing of any bill of foreclosure of this trust deed the complainant shall immediately and without notice be entitled to the appointment of a receiver or receivers of the mortgaged property and of the rents, issues and profits thereof, with the usual powers of receivers in such cases and said receiver or receivers may be continued in possession of the said property during the pendency of such foreclosure suit and until said property shall be relieved from said receivership, by the court of proper jurisdiction, and the said receiver, under the proper orders of the court appointing such receiver, may continue to carry on and conduct the said business and operate the said property. * * *

"SEVENTEENTH. No holder or holders of any of said bonds or coupons shall have the right to institute any proceeding of any kind for the foreclosure of this indenture or for the execution of the Trusts thereof, or for the ap-

pointment of a receiver, or for any other remedy under this mortgage or deed of trust or under the lien hereby created, without first giving notice in writing to The American Trust Company, Trustee, of default having been made and continued as aforesaid and unless the holders of twenty-five per cent. in amount of the then outstanding bonds in writing notified and requested the said Trustee, as above provided, and a reasonable opportunity has been afforded to said Trustee after receipt of such notice and request, to proceed and exercise the power herein granted, or to institute such action, suit or proceeding in its own name, and without also having offered to the Trustee adequate security and indemnity against the costs and expenses and liabilities to be by the Trustee incurred therein or thereby; and such notice, request and offer of indemnity may be required by The American Trust Company, as conditions precedent to the execution of the powers and trusts of this indenture, for any action of whatever kind in equity, for the foreclosure hereof, for the appointment of a receiver, or for any other remedy hereunder, or otherwise in case of any default hereunder; and it is also agreed that no holder or holders of said bonds, or any of interest coupons intended to be hereby secured shall institute any suit, action or proceeding for the foreclosure hereof, or for the appointment of a receiver or for the collection of any of the money evidenced by such bond or coupons, otherwise than upon the terms and conditions and in the manner herein provided.

"EIGHTEENTH. Should any suit or other proceeding be brought against the Trustee by reason of any matter or things connected with the trust hereby created or by reason of being such Trustee, the costs and expenses of defending the same by said Trustee, including its counsel's fees and its compensation, shall be a first lien upon the trust property

and shall be paid and compensated for out of said trust property. * * *

"TWENTIETH. Before proceeding to foreclose this deed or mortgage, The American Trust Company, Trustee, shall have the right first, to exact from the holders of said bonds reasonable indemnity against loss or liability that may be incurred by it in so doing; and upon the tender by the holders of said bonds, or any of them, of such reasonable indemnity whether previously requested of them or not, and upon the written request of the holders of twenty-five per cent. in amount of all of said bonds then outstanding, unpaid or not redeemed, it shall be the duty of the Trustee in case of any default continuing on the part of said Company as hereinbefore provided, and not waived as herein provided, to foreclose the lien hereby created in such lawful manner as The American Trust Company, Trustee, may deem best and said The American Trust Company, Trustee, shall have charge, direction and control of any and all such proceedings.

"TWENTY-FIRST. No delay or omission by the Trustee in exercising the rights and powers herein granted shall be held to exhaust such rights or powers or to be considered as a waiver thereof, but it is hereby mutually agreed that the holders of seventy-five per cent. (75%) in amount of the bonds at the time outstanding may, by an instrument in writing, at any time, whether before or after the institution of foreclosure proceedings and prior to the time of sale thereunder, waive or instruct the Trustee to waive any default except that of payment of the principal of said bonds at maturity, provided always that no such action on the part of the holders of said bonds shall extend to or be taken to affect any subsequent default or impair the rights resulting therefrom. * * *

"TWENTY-SIXTH. All notices, requests and demands of the said bondholders affecting any of the rights and remedies or for the benefit of the said bondholders or affecting the duty of the Trustee, or in pursuance of the trust hereby created shall be authenticated by an instrument or instruments, in writing, signed by the person assenting thereto or their attorneys in fact duly authorized for that purpose.

"Any request or other instrument required by this indenture to be signed and executed by bondholders may be in any number of concurrent instruments of similar tenor and date."

It will thus be seen that in the bill of complaint filed by appellee in the instant case there is no attempt made by the pleader to show any compliance with Paragraph "Seventeenth," or any other particular provision of the mortgage trust deed sued upon. On the contrary, the bill of complaint mkaes certain allegations that are designed to relieve the·complainant below from showing such compliance. It endeavors to demonstrate the right of complainant as a bond coupon holder to maintain the instant suit absent even a colorable compliance with the specific provisions of the trust deed that limit the right to sue for foreclosure of the mortgage to the Trustee named therein, with the exceptions stated.

It is the general rule that when definite security has been established for the ultimate payment of bonds and interest coupons, as it generally is by mortgage or trust deed covering a corporate mortgagor's property, the holders of bonds and coupons acquire a vested interest in the security and its preservation and protection pending the coming due of the instrument secured, and that such an interest is one that a court of equity will extend its hands to guard by appropriate injunction or otherwise, whenever the processes of

law are for any reason inadequate for the purpose of protecting the bond or coupon holders. Thus, if it be made apparent that waste, deterioration or even destruction of the property standing as security under a trust deed is in progress or threatened, a court of equity will open its doors to bondholders and others interested in the security, and through injunction will put an end to the unlawful acts which are injuring or threatening the security. And in such cases it is not necessary to seeking protection for their security, that bondholders await appropriate action by the corporation itself, for they may ignore the corporation completely, as it is not a necessary party to such proceedings. Moreover, it is not necessary that the Trustee in a trust indenture securing the bonds be consulted or brought into court in order to give the bondholders a remedy by way of injunction to protect their security. Nor are restrictive provisions in the trust deed apparently conferring the exclusive right of action upon the Trustee in this regard, operative to avoid action of the individual bondholders for the protection of the security, since injunction to protect the security is a remedy that in equity amounts neither to the collection of the bonds nor the enforcement of the securing deed, within the prohibition of such an instrument, if one is therein contained, vesting the right of enforcing the trust deed primarily in the Trustee. Carter v. Fortney, 170 Fed. 463; Jennings v. United States, 264 Fed. 399; Fidelity Bond & Mtg. Co. v. Grand Lodge I. O. O. F., 41 Fed. (2nd) 326; Guaranty Trust & Safe Deposit Co. v. Green Cove Springs & M. R. Co., 139 U. S. 137, 35 L. Ed. 116, 11 Sup. Ct. Rep. 512; Hoyt v. E. I. Dupont de Nemours Powder Co., 88 N. J. Eq. 196, 102 Atl. Rep. 666; Lowe v. Los Angeles Suburban Gas Co., 24 Cal. App. 367, 141 Pac. Rep. 399.

But the relief sought by the bill of complaint under consideration in the instant case is not for an injunction to protect the mortgage security, or the income thereof, in order that the complainant's bond coupons may be paid and satisfied in due course. Neither is it a suit seeking damages or appropriate relief as a means of redress for some unlawful diversion, of the mortgaged property or its income. Nor is it an application for equitable relief to conserve the security for the ultimate redemption of the bonds and coupons for the payment of which the mortgaged property and its income have been pledged in the trust deed made a part of the bill of complaint. Nor is the suit one to have judicially restored the value of an impairment to the security that has been allowed to transpire to the prejudice of the complainant as the lawful holder of unpaid bonds or coupons. Nor is it a suit to remove the Trustee for breach of trust by appointing someone else to take its place and act in its stead for complainant's protection.

On the contrary, the appellee takes the position in its bill of complaint (and so argues to this Court) that although admittedly there are specific provisions incorporated in the mortgage or deed of trust sued on, that undertake to prohibit holders of bonds or coupons from instituting foreclosure proceedings unless and until the Trustee has refused so to do after being requested in writing to proceed to foreclose by no less number of interested parties than the holders of 25% of the involved bonds, that nevertheless such positive provisions of the mortgage trust deed have ceased to be binding upon complainant in this case as an individual coupon holder because of the fact that complainant has undertaken to charge fraud and breach of trust on the part of the substituted Trustee, Florida National Bank of Jacksonville, by alleging that such Trustee and the mortgagor,

Florida Fair and Exposition Association, Inc., have conspired to defraud the minority coupon holders out of their rights, or at least that the Trustee has been faithless to its trust by neglecting to sue for the protection of the interest of the coupon holders and hondholders in accordance with the intent of the trust created by the mortgage deed. It was upon the last stated theory of the case that the validity of the complainant's bill of complaint was required to be sustained if at all, as against the grounds of the motion filed to attack the same in the court below, which motion the Chancellor overruled.

The Seventeenth paragraph of the mortagage trust deed sued upon, as hereinbefore quoted, in unambiguous terms, definitely provides that no holder or holders of any of the involved bonds or coupons shall have the right to institute any proceeding of any kind for the foreclosure of said trust deed or for the execution of the trust thereof, or for the appointment of a receiver, or for any other remedy under said trust deed or under the lien thereby created, without first giving notice in writing to the Trustee, or for default having been made and continued for the time stipulated in the instrument, nor unless the holders of 25% in amount of the then outstanding bonds in writing shall notify and request the Trustee by the said trust deed after a reasonable opportunity has been afforded it so to do after receipt of such notice and request.

It is the policy of the law to sustain the validity of such reasonable provisions inserted in a mortgage or trust deed, securing an issue of corporate bonds, which are designed to pass into the hands of separate individual holders for the better securing of same, so that such security shall not be impaired, by the conduct of one or a few of. the separate

individual holders to the prejudice of holders of the security obligations in general.

In this view of the law, stipulations contained in security instruments, such as mortgages and trust deeds of corporations, which are aptly referred to in the bonds themselves, providing that there shall not be a foreclosure or a suit instituted by an individual holder with a view of converting the property pledged to the payment of a portion of the obligation outstanding, or to obtain judgment on individual bonds without the consent of the other holders, are generally sustained by the courts as reasonable limitations imposed by the bondholders through mutual agreement upon the rights of each other.

Such stipulations are not viewed, as they formerly were in some of the earlier cases, as tending to oust the courts of jurisdiction in the premises. On the contrary, they are now considered as wholesome restrictions imposed by mutual agreement and consent for the better security holders concerned. Their purpose has been generally regarded as intended to curb any proclivity or inclination on the part of a minority of the security holders, or on the part of a single individual holder, to seize upon some critical moment in the financial affairs of the issuing mortgagor for precipitating a foreclosure at a time when leniency is the will of the majority of those having an interest in the mortgaged property, and when it is their wish not to bring about a summary liquidation of the mortgage security by forcing a sale of it under circumstances not propitious. Such provisions are also to be considered as forestalling the ability of the minority to establish a maneuvering, or a nuisance, value of their particular bonds in excess of their real worth, by bringing actions, or threatening actions in court, contrary to the considered judgment of the Trustee and the

wishes of the majority of the security holders for a temporary forbearance in strict enforcement of payment, so that a more orderly collection can be realized by less oppressive measures.

The task of the courts, when confronted with such stipulations contained in a mortgage or trust deed, is first to construe the bonds and trust agreement to ascertain their intent. If upon a fair reading of those instruments the courts are convinced that it was mutually intended by the parties that save upon the conditions specified in the security instrument, no individual bondholder may sue upon his bond for a foreclosure of the security, there is no choice but to enforce the purpose and intent of such provisions, in the absence of fraud or unfair dealing that will deny to such stipulations the restraining effect that the parties to them intended them to have. While such provisions are not favored and ought to be strictly construed, reasonable stipulations of the foregoing character are not against public policy, but are valid if freely consented to, for they then become a matter of contract and are enforceable as such.

We hold, therefore, in line with the weight of authority in the United States, that where a trust deed provides that no holder of any of the bonds or coupons secured thereby shall have the right to institute any proceedings of any kind for the foreclosure of such trust deed, without first giving notice in writing to the Trustee of default and unless the holders of a specified per cent. in amount of the outstanding bonds in writing notify and request such Trustee to foreclose, and a reasonable opportunity has been afforded to said Trustee after receipt of such notice and request to proceed with such foreclosure, and without having offered to such Trustee, as required by the terms of the trust deed, adequate security and indemnity against the costs, expenses and lia-

540

bilities likely to be incurred in connection with the requested foreclosure, that the individual holders of bonds or coupons secured by such trust deed have no right to institute nor maintain a suit to foreclose the whole of such bond issue absent a showing of compliance with the provisions and limitations of the trust deed as to the right to begin and carry on foreclosure litigation, and that such a contractual limitation on the right of an individual bond or coupon holder to sue for foreclosure of the trust deed, as above specified, is not affected nor superseded by allegations of an individual bond or coupon holder that the Trustee has been faithless to his trust, or that he has been or is conspiring to favor certain classes of bondholders, or that he refuses, without just cause, to himself take steps to foreclose the trust deed for the protection of the individual bond or coupon holder attempting to bring and maintain a foreclosure suit in his own right on behalf of the other security holders or for their pretended protection. Falmouth National Bank v. Cape Cod Ship Canal Co., 166 Mass. 550, 44 N. E. Rep. 617; Seibert v. Minneapolis & St. Louis Ry. Co., 52 Minn. 148, 53 N. W. Rep. 1134; 20 L. R. A. 535; Batchelder v. Council Grove Water Co., 131 N. Y. 42, 29 N. E. Rep. 801; California Safe Deposit & Trust Co. v. Sierra Valleys R. Co., 158 Cal. 690, 112 Pac. Rep. 274, Ann. Cas. 1912A, 729; Chicago D. & V. R. Co. v. Fosdick, 106 U. S. 47, 1 Sup. Ct. Rep. 10, 27 L. Ed. 47; Rodman v. Richfield Oil Company of California, 66 Fed. (2nd) 244; Boley v. Lake Street Elevated R. Co., 64 Ill. App. 305; Employers Reinsurance Corp. v. Boston Mututal Life Ins. Co., 45 Fed. (2nd) 593; Frobisher v. Tudor Corp., 114 N. J. Eq. 470, 16 8Atl. Rep. 855; Noble v. European Mtg. & Inv. Corp., 19 Del. Ch. 216, 165 Atl. Rep. 157; Reinhardt v. Inter-State Tel. Co., 71 N. J. Eq. 70, 63 Atl. Rep. 1097; Moody v. Pacific Steamship Co.,

174 Wash. 256, 24 Pac. Rep. (2nd) 609; Muren v. Southern Coal & Mining Co., 177 Mo. App. 600, 160 S. W. Rep. 835; Barker v. Utah-Idaho Cent. R. Co., 57 Utah 494, 195 Pac. Rep. 635; Grant v. Winona & S. W. Ry. Co., 85 Minn. 422, 89 N. W. Rep. 60; Bartol v. Gottleib-Bauernschmidt-Straus Brewing Co., 129 Md. 32, 98 Atl. Rep. 286. Compare: Denver Omnibus & Cab Co., 254 Fed. 560.

In the present case, while it is alleged in complainant's bill for foreclosure of its coupons, that the substituted Trustee, Florida National Bank of Jacksonville, has failed to act, that the defendant Almours Securities, Inc., is the owner of more than 75% in amount of the bonds outstanding and that one J. E. Rawlings, also named in the bill as a defendant, become the purchaser of same as a mere "dummy" for the defendant, Almours Securities, Inc., and that the defendants, J. E. Rawlings and the Florida State Fair and Exposition Association, Inc., have conspired to defraud all other bond and coupon holders by retaining the income properly applicable to the payment of the interest represented by complainant's coupons from the mortgaged property, for themselves and certain unsecured creditors of the Florida State Fair and Exposition Association, Inc., and that the substituted Trustee, Florida National Bank of Jacksonville is a banking corporation dominated and controlled by A. I. DuPont and Edward Ball, who likewise dominate and control by stock ownership, the Almours Securities, Inc., and Jacksonville Properties, Inc., who in turn are owners of more than 75% of the mortgage bonds, and that therefore the interests of the Trustee are adverse to the interests of minority bond and coupon holders, and even that the Trustee has conspired with the mortgagor to breach the covenants of the mortgage trust deed in certain specified particulars, the bill of complaint does not allege compliance

with the conditions of the mortgage trust deed entitling complainant below, as the mere holder of a small amount of assigned bond coupons, to nominate and invest itself with the powers of the stipulated Trustee for the purpose of bringing and maintaining *foreclosure* within the rule of the authorities hereinbefore cited, therefore the bill of complaint, insofar as it sought foreclosure of the trust deed at the instance of a minority coupon holder, in violation of the express consensual limitations of the mortgage trust deed to the contrary, binding upon the complainant below, was insufficient in equity and the defendant's motion to dismiss the same on that ground should have been sustained.

Where a mortgage or trust deed contains express contractual limitations on the right of the parties at interest to foreclose it, which contractual limitations are binding upon all bond or coupon holders alike, the fact that the stipulated Trustee unjustly neglects or refuses to take appropriate action to institute suit to foreclose the mortgage or trust deed on his own initiative, or occupies a hostile position to a minority of the security holders, or assumes an attitude antagonistic and prejudicial to the rights of individual or minority coupon or bondholders, or conspires to defeat the rights of some of his *cestui que trustents,* does not destroy nor supersede the contractual limitations on the rights of bondholders to institute and maintain actions *for foreclosure,* although it does give rise to an independent equity that will sustain an appropriate suit for ouster of the Trustee for neglect of duty and faithlessness to his trust, and thereby afford the injured minority or individual bond or coupon holder ultimate relief that can be secured in the manner and according to the terms of the contract, and not in disregard of its purposes and intendments. Hoyt v. E. I. Dupont de Nemours Powder Co., *supra;* Guaranty Trust & Safe De-

posit Co. v. Green Cove Springs & M. R. Co., *supra;* Dilla-
way v. Boston Gas Light Co., 174 Mass. 80, 54 N. E. Rep.
359. Compare: Lowe v. Los Angeles Suburban Gas Co.,
24 Cal. App. 367, 141 Pac. Rep. 399; Allen v. Philadelphia
Co., 265 Fed. 807, affirmed in 265 Fed. 817, certiorari de-
nied 254 U. S. 633, 65 L. Ed. 448, 41 Sup. Ct. Rep. 8;
Falmouth National Bank v. Cape Cod Ship Canal Co., 166
Mass. 550, 44 N. E. Rep. 617; Brown v. Denver Omnibus
& Cab Co., 254 Fed. 560, *supra.*

The rights of the bondholder should not be permitted to
fail because of the refusal of a Trustee under a trust deed
to act, and in proper cases where no valid contractural limi-
tations outline a different binding course of procedure to be
followed by the affected party in order to obtain relief in
such a situation, a court of equity may take the place of the
faithless Trustee and allow proceedings to be instituted and
maintained as if the Trustee were present and acting, yet
this doctrine has no appropriate application to a case like
the one at bar wherein the mortgage or trust deed has an-
ticipated and provided for a definite course of procedure to
be followed in case proceedings for foreclosure of the mort-
gage are to be initiated by minority security holders as a
means of enforcing their contractual rights.

Reversed for appropriate disposition of cause in a manner
not inconsistent with this opinion.

WHITFIELD, C. J., and TERRELL, BROWN and BUFORD,
J. J., concur.