MAX E. LUBIN, Plaintiff, *v.* PRESSED STEEL CAR COMPANY, Defendant.

City Court of New York, Kings County, February 7, 1933.

*Julius Wolfson*, for the plaintiff.

*Larkin, Rathbone & Perry*, for the defendant.

GOLDSTEIN, J. Plaintiff has instituted an action at law as the holder of a bond in the principal sum of $1,000, issued by the defendant, Pressed Steel Car Company, maturing on the 1st day of January, 1933. Said bond is one of a series of bonds issued by the defendant, designated by it ten-year five per cent convertible gold bonds, aggregating the principal sum of $6,000,000, which said bond issue was created for the purpose of providing funds for the said defendant for the payment of indebtedness contracted by it and its subsidiaries in the usual course of its corporate business and to provide additional working capital.

The said bond issue was created under an indenture dated December 30, 1922, between the said defendant and the New York Trust Company, trustee. Under the terms of the bond on which plaintiff instituted his suit it is provided therein that the defendant will unconditionally on January 1, 1933, pay the sum of $1,000 in gold coin of the United States of America of or equal to the present standard of weight and fineness, and will pay interest thereon from January 1, 1923, at the rate of five per cent per annum, payable in like gold coin semi-annually on the first day of January and the first day of July upon the usual presentation and surrender of annexed coupons. The bond then further provides for the customary two per cent allowance for Federal income tax and the customary allowances for State tax. Further provision is therein contained as follows: " This bond is one of an issue of bonds aggregating Six Million ($6,000,000.00) Dollars, in denominations of $1,000.00 and $500.00 all of like date and of like tenor except as to denomination, all of which bonds have been issued under and are equally secured by an Indenture dated December 30, 1922, between the Company and The New York Trust Company as Trustee, to which Indenture reference is hereby made for a state-

ment of the rights of the holders of said bonds." There then follows the customary prior maturity clause in the event of default; also customary provision permitting bondholders to convert bonds of $1,000 denomination into $500 denomination and *vice versa;* a provision permitting redemption of the bond on any interest paying date after notice; the customary provision that the bond shall pass by delivery unless registered, and the usual provisions for registration of the bonds. A clause follows exempting stockholders, officers and directors of the defendant from any liability with reference to the creation of the said issue, the customary authentication clause and the certification that the necessary United States documentary stamps have been affixed to the identure.

The defendant does not seriously controvert any of the material allegations of the complaint, but sets up an alleged complete defense which alleges in substance that the bond sued on by plaintiff was created under the said indenture and that plaintiff is bound by the provisions of the said indenture, among which that contained in article 4, section 6, would act as a bar to plaintiff's recovery in this cause of action. The said provision reads as follows:

" Section 6. All rights of action on or because of the bonds and interest coupons or any of them, or under this indenture, except as hereinafter provided, are hereby expressly declared to be vested exclusively in the Trustee, and such rights may be enforced by the Trustee without the possession of any such bond or interest coupon. No holder of any such bond or interest coupon shall have any right to institute any suit, action or proceeding for the enforcement of any of the terms of this agreement or of such bonds or coupons without first giving to the Trustee written notice that one or more of the events of default hereinafter mentioned has occurred, nor unless the holders of one-fourth in principal amount of the then outstanding bonds shall have requested the Trustee in writing and shall have afforded it reasonable opportunity to institute such action, suit or proceeding in its own name and shall have offered indemnity satisfactory to the Trustee, and shall have deposited their bonds with the Trustee if so requested by the Trustee; but if the Trustee shall have failed to take such action for sixty days after such written notice, request, offer of indemnity and deposit of bonds, the holder of any bond or bonds may proceed thereon."

It is not controverted that on January 3, 1933, plaintiff duly presented the bond for payment and payment of the same was refused, and the defendant in its answer specifically admits that the bond is unpaid with interest thereon from the 3d day of January, 1933.

Plaintiff moves on the pleadings for summary judgment under

rule 113 of the Rules of Civil Practice. The only question, therefore, for determination before the court is whether the failure of plaintiff to comply with article 4, section 6, defeats the plaintiff's cause of action. It must be borne in mind that the theory of the plaintiff's cause of action is that this is an action based upon the unconditional promise to pay to bearer contained in the bond and coupons thereunto attached, which form part thereof. The plaintiff does not seek to enforce any of the terms of the indenture, nor to seek the aid or assistance of any of the terms of the indenture in his cause of action. A situation almost identical with the one at bar is found in *Berman* v. *Consolidated Nevada-Utah Corp.* (132 Misc. 462). Suit in that case was similarly brought by plaintiff on bonds and coupons which had matured and remained unpaid. The bond contained provision similar to the one sued on herein, referring the holder of the bond to the indenture, in language almost identical with that contained in the bond sued on hereunder. The provisions of the indenture containing inhibitory language preventing suit unless brought by a certain percentage of the owners and holders of bonds issued and outstanding is almost parallel with that contained in the indenture herein. It was likewise admitted in that suit that the notice required under the indenture had not been given by the plaintiff and that the requisite percentage of bondholders had not made the necessary request on the trustee, as pleaded herein, yet the court held that the provisions of the indenture could not defeat the plaintiff's cause of action which was brought solely on the bond to recover upon the unconditional promise to pay, therein contained. It would appear from the reasoning of the court in the said *Berman* case that it was the duty of the defendant to place the holders of said bonds reasonably on notice. As to the provisions in the indenture inconsistent with the provisions of the bond, the court held therein that it was the duty of the defendant to have inserted such restrictions, conditions and limitations on the face of the bond or by language reasonably clear therein contained to indicate the nature and existence of such conditions and limitations as contained in the said indenture. In the absence of such limitation being contained in the bond, the court indicated the purchaser and subsequent purchasers thereof cannot reasonably be held to have had due notice of such limitations or restrictions.

In *Rothschild* v. *Rio Grande Western Railway Co.* (84 Hun, 103; affd., 164 N. Y. 594) we have an enunciation of the same principles of law. It is very aptly stated in that opinion by the court that the provisions of the bond meet the eye of the purchaser and are

designed by the corporation to enforce their sale and that they cannot be nullified by an inconsistent provision contained in the trust deed. It is evident that the mere general reference contained in the bond that the bond is created under a certain indenture and that for the terms thereof the holder is referred to the contents of the indenture is not sufficiently explicit to place the holder on notice of the nature of the inhibitions thrown about the enforcement of the rights of the bondholders, as contained in the indenture herein pleaded. While it is true that the bond and the indenture must be read together in order to arrive at the intent of the parties, this rule is limited by the further proviso that the two instruments must be consistent, and that where an inconsistency exists as between the two instruments the provisions of the bond must prevail because that is the instrument on which the holder primarily relies when he is making his purchase. (See *Rothschild* v. *Rio Grande Western Railway Co.*, *supra*, at p. 109, where it is stated as follows: "Undoubtedly the bond and trust deed are to be construed together, but in case there is any ambiguity in any of the provisions of the mortgage, such ambiguity must be construed against the corporation. It is an elementary rule for the construction of contracts that ambiguous phrases are to be taken most strongly against the covenantor, whose words they are. This rule is universally applied to contracts of insurance, and to instruments which are wholly devised by or in behalf of the covenantor, and it should be rigorously applied to the construction of trust deeds or mortgages which purport to be designed for securing the payment of the bonds of the obligor. It is true that these deeds are matters of record, but the records are often in a State distant from the place at which the bonds are sold, and the purchaser seldom has an opportunity of examining the terms of the instrument.")

And at page 110: " The provisions of the bond meet the eye of the purchaser and are designed by the corporation to influence their sale, and they cannot be nullified by an inconsistent provision contained in the trust deed. As before stated, these bonds and coupons contain an absolute promise to pay definite sums on specific dates, which implies a right of action in case of failure, and if the eighth article is capable of the construction contended for by the corporation it is utterly inconsistent with the bonds, which in that case must prevail." (See, also, *General Investment Co.* v. *Interborough Rapid Transit Co.*, 200 App. Div. 794; affd., 235 N. Y. 133, *Beach* v. *Supreme Tent of the Knights of the Maccabees of the World*, 177 id. 100.)

The court has carefully considered the authorities cited in the memorandum submitted by the defendant but cannot find that

the authorities therein contained in any manner distinguish or override the principles established in the foregoing decisions cited herein. The authorities on which the defendant seems to rely, restricting the right of a bondholder's suit, seem to be limited to actions brought by the bondholder either to enforce the terms of the indenture or to prevent a violation of the terms of the indenture or to enjoin waste, diversion or misapplication of corporate assets in violation of the indenture. The court is not called upon to pass upon the soundness of those decisions in this opinion, as the propositions of law or equity involved in those cases are not applicable to the case at bar.

The recent case of *Relmar Holding Co., Inc.,* v. *Paramount Publix Corporation,* cited by the defendant, does not appear to be determinative of the issues involved herein, because it is obvious that that cause of action was brought by the plaintiff therein directly under the indenture and to restrain a violation of the terms of the said indenture.

I, therefore, do not deem that the alleged defense interposed is sufficient in law to defeat the plaintiff's cause of action, and the motion for summary judgment is, therefore, granted. Submit order.