## GELLERT v. BALDWIN LOCOMOTIVE WORKS.

### No. 17384.

District Court, E. D. Pennsylvania.

May 9, 1933.

Sheldon F. Potter, of Philadelphia, Pa., for plaintiff.

William Clarke Mason, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge.

New conditions introduce new practices. When loan transactions were small, there was a borrower and a lender. If the loan was secured by a mortgage or other pledge, the lender in case of default could take care of himself. When very large loans came to be made, no one lender could take the whole loan. It was necessary to divide it among a large number of lenders. This in turn necessitated that a representative be chosen to act as a trustee for all. The individual lenders thus lost the power to each act for himself. Out of this grew the practice of the borrower dividing his obligation to repay into a series of smaller obligations (called bonds) and executing a mortgage to a trustee to secure the payment of the whole series of bonds issued. There was thus need for a provision for concert of action in case of default. This usually took the form of committing the initiative to the judgment of the trustee, subject, however, to the control of a named percentage of the bondholders. This provision was clearly for the benefit of the bondholders. It was in effect an inter se agreement that each would forego his individual rights in order that there might be concert of action and joint control. So far as we know, it was never questioned that every bondholder was bound by this agreement and had surrendered what would otherwise have been his individual right to act, in favor of this joint right.

In respect to the mortgaged premises or other property pledged for the payment of the whole debt, the bondholders were in effect joint owners and each was bound by the agreement they had made among themselves. The borrower, however, made two promises. One was to pay to the holder of any bond the sum named in that bond; the other was a promise to pay the aggregate sum of the whole issue of bonds coupled with a pledge of property to secure this payment. Although each individual bondholder had surrendered, to the control of all, his right to pursue the mortgage security, it would not follow that he had also surrendered his right to bring an action upon the individual promise made to him as a bondholder to pay that bond. Later on, the plan of these mortgage or other pledge agreements was applied to borrowings without pledge. A borrower being desirous of the loan of a large sum divided it into a series of bond obligations. When issued by corporations (as they usually were), they were given the name of debenture bonds or debentures. The underlying thought was to make of each bond a promise to pay but to tie the whole issue together so that all the promises to individual bondholders would be included in one promise to pay the aggregate sum of the bonds, which latter promise was made to all the bondholders jointly or to a trustee for them. The control of this joint right was confided to the trustee named subject to that of a named percentage of the bondholders. In other words, the control of the loan when no security was given was sought to be placed in the same hands as in the case of mortgage loans.

To clarify the situation, a few comments may be here made. One is, that before made, that the joint owners of a mortgage or other property may make an agreement among themselves for joint control. Others are that a pledgor may bind himself to pay a debt independently of or in addition to the pledge of security for its payment and that of other like debts. An agreement among joint owners of the security for its joint control would not of itself be a surrender to joint control of the right of the individual to bring an action upon the promise made to him. In the case of the issue of so-called deben-

ture bonds, the agreement made may be in effect at least that no bondholder will enforce the payment of his bond except at the instance of the named percentage of bondholders. The effect may be that the right of action is joint. Creditors may make an agreement among themselves and with the debtor, each to forego his individual right of action. A familiar instance of this is a composition agreement. Such an agreement would mean that no creditor would enforce payment of the debt due him except at the instance of the named percentage of all creditors.

Coming from generals to particulars, the defendant here issued bonds of this debenture type in the aggregate sum of $12,000,-000. They matured March 1, 1933. Anticipating this maturity a new issue of bonds was made to take the place of the first issue. We will assume, as is usual in such cases, that a very large percentage of the bondholders have accepted the new issues. The plaintiff as the holder of $40,000 of the first issue asks for payment of the bonds he holds and has brought this suit declaring upon the promise which the bonds express. The defendant has interposed the defense that the bonds sued upon are part of an issue of $12,000,000, the holders of which are all bound by the agreement into which they have entered.

The defendant relies upon the following cases to support its proposition that this agreement is a defense: Allan v. Moline Plow Co. (C. C. A.) 14 F.(2d) 912; Crosthwaite v. Moline Plow Co. (D. C.) 298 F. 466; Lidgerwood v. Hale & Kilburn Corp. (D. C.) 47 F.(2d) 318.

The plaintiff per contra relies on the case of Lubin v. Pressed Steel Car Company, 146 Misc. 462, 263 N. Y. S. 433.

It is unnecessary for us to go into this, because the very capable counsel for plaintiff concedes that, if plaintiff is a party to this agreement, he is bound by it and cannot maintain his action.

Each of the parties has set up a claim to so-called equities. As we view it, each is standing upon his legal rights. Even if it were true, of which we know nothing, that the plaintiff bought the bonds in suit just before they matured, whatever may have been his motive for so doing, if he has a legal right to judgment, this right cannot be denied him. He very confidently asserts this right, but bases it upon the proposition that the bonds sued upon are negotiable instruments freed as such from the defense set up. We repeat that there is no denial of the sufficiency of the defense as such. The denial is that it can be set up as a defense to a demand for payment of a negotiable instrument. We think it clear that we cannot enter a summary judgment on this ground. The rule before us is for judgment for want of a sufficient affidavit of defense. The real position of the plaintiff is that the defense set up, although sufficient in itself, cannot prevent the entry of judgment because the instrument sued upon is negotiable and the plaintiff an innocent holder for value without notice, before maturity. We cannot make the latter finding from this record. Thus what the plaintiff is really asking us to do is to rule as a question of law in advance of trial that the instruments sued upon are within the law of negotiable instruments. An affirmative answer to this question would not give the plaintiff the right to judgment now, and, as the question will arise as a trial question, it is best left to be made the subject of a trial ruling. In other words, even if the obligation sued upon be a negotiable instrument, if the plaintiff is not an innocent holder, but knew that the obligation was subject to this defense, he took title cum onere. The question of whether the obligation is negotiable, within the meaning of the Negotiable Instruments Law, is thus an abstract question of law which we are not now called upon to answer.

Rule for judgment discharged.