**HARVEY v. ILLINOIS POWER & LIGHT CORPORATION.**

No. 566–D.

District Court, E. D. Illinois.

June 5, 1933.

Teller, Levit, Silvertrust & Levi, of Chicago, Ill., for plaintiff.

Defrees, Buckingham, Jones & Hoffman, of Chicago, Ill., for defendant.

LINDLEY, District Judge.

Plaintiff, averring that he is the owner of certain bonds secured by trust deed issued by defendant, brings this suit in behalf of himself and all bondholders, stockholders, and creditors of defendant who may desire to take advantage of the same. Defendant moves to dismiss the bill for want of equity.

The essence of the complaint is that for a number of years last past defendant has followed the practice of charging inadequate amounts to depreciation of physical properties, thereby showing greater earnings than the facts warrant, from which dividends have been and are being paid to the detriment of the bondholders. It is alleged that upon making proper depreciation charges, the present apparent surplus would be converted into a deficit of $27,272,541. Therefore, it is contended by plaintiff in his bill of complaint the property of the corporation is being dissipated for the benefit of the stockholders, including the North American Light & Power Company, which holds all of the common stock of defendant now issued.

In further support of the allegation of dissipation of assets, plaintiff cites a specific transaction wherein it is said that defendant exchanged its holding of common stock of $4,000,000 par value of the Kansas Power & Light Company for $4,072,000 par value of 6 per cent. cumulative preferred stock of the same company, the same exchange having been made with the North American Light & Power Company. This exchange, it is said, was ill advised and detrimental to defendant.

It is further specifically alleged as improper management on the part of the company and its board of directors, that its annual reports are wrongful and misleading for the reason that they rely upon and include the alleged insufficient depreciation charges above mentioned. These reports were

490

accompanied by a statement of the auditors, Price Waterhouse & Company, to the effect that their conclusions were based on an acceptance of the company's policy of providing for retirements. It is insisted, therefore, that there was not a frank or independent audit.

Various charges are made with respect to the inadequacy of the annual reports of defendant and to a transaction whereby defendant acquired the Midwest Industrial Development Company. This latter transaction plaintiff says cannot be supported by any showing of desirability or benefit to defendant.

From all of the averments, apparently the plaintiff is seeking a decree to the effect that the business of defendant is being conducted at a loss and in a manner prejudicial to the interest of its bondholders, creditors, and stockholders; that the court take possession of the defendant's property, appoint a receiver therefor, administer the same, marshal the assets and liabilities, restrain all parties in interest from interfering with the receiver's custody, and enjoin the company, its officers, directors, agents, and employees, from exercising its corporate franchises,.and from selling or disposing of any of the assets, and grant permission to plaintiff to examine the books, records, and papers of defendant.

There is no averment that the company is insolvent, but it is contended that under the present practice it will inevitably become so. There is no averment of default in interest.

Apparently the plaintiff brings this suit relying upon his rights as a bondholder. By agreement of the parties the trust deed securing bonds of which plaintiff's are a part was received by the court as an exhibit to the bill of complaint. The bonds contain a provision that they are "all equally and ratably secured by, an Indenture of mortgage or deed of trust, dated April 2, 1923, duly executed by the Company to Harris Trust and Savings Bank and M. H. MacLean, as Trustees, to which Indenture reference is hereby made for a description of the property thereby mortgaged and pledged, the nature and extent of the security thereby created, and the rights of the holders of said bonds in respect of such security."

Upon referring to the trust deed we find that section 13 reads as follows: "No holder of any bond or coupon secured hereby shall have any right to institute any suit, action or proceeding in equity or at law for the foreclosure of this Indenture, or for the execution of any trust thereof, or for the appointment of a receiver, or for any other remedy hereunder, unless such holder shall previously have given to the Trustees written notice of such default and of the continuance thereof as hereinbefore provided; nor unless, also, the holders of such proportion as is hereinbefore specified of the bonds hereby secured then outstanding shall have made written request upon the Trustees and shall have offered to them a reasonable opportunity, either to proceed to exercise the powers hereinbefore granted, or to institute such action, suit or proceeding, in their own names (and the Trustees shall have refused or unreasonably delayed to comply with such request); nor unless, also, they or some one or more of the holders of said bonds shall have offered to the Trustees security and indemnity to the satisfaction of the Trustees against the costs, expenses and liabilities to be incurred therein or thereby, and such notification, request and offer of indemnity are hereby declared in every such case, at the option of the Trustees, to be conditions precedent to the execution of the powers and trusts of this Indenture for the benefit of the bondholders, and to any action or cause of action for foreclosure, or for the appointment of a receiver, or for any other remedy hereunder, it being understood and intended that no one or more holders of bonds and coupons shall have any right in any manner whatever by his or her action to affect, disturb, or prejudice the lien of this Indenture, or to enforce any right hereunder, except in the manner herein provided, and that all proceedings at law or in equity shall be instituted, had and maintained in the manner herein provided, and for the equal benefit of all holders of such outstanding bonds and coupons."

Such provisions in trust deeds are entirely reasonable in the execution of trusts to the end that there may not be miscellaneous and promiscuous attempts to interfere by litigation by numerous individuals holding interests under such conveyances, and the courts have repeatedly put their stamp of approval thereon. Allan v. Moline Plow Co. (C. C. A. 8) 14 F.(2d) 912; McGeorge v. Big Stone Gap Improvement Co. (C. C.) 57 F. 262; Crosthwaite v. Moline Plow Co. (D. C.) 298 F. 466; Batchelder v. Council Grove Water Co., 131 N. Y. 42, 29 N. E. 801; Home Mortgage Co. v. Ramsey (C. C. A.) 49 F.(2d) 738. The unity of interest of bondholders and the desirability of cooperation, rather than multiplicitous controversies, have inspired these provisions and the courts' approval thereof.

■ There are no averments in the bill of complaint which would bring the plaintiff within any exception to the rule or create in him any exemption from the all-inclusive effect of the provisions quoted. It follows, therefore, that the plaintiff under the present showing may not as a lienholder maintain the present suit under the showing of his complaint. This applies with special force to the averments concerning depreciation charges, in view of the provisions of the trust deed applicable thereto.

■ If we treat the plaintiff as a simple contract creditor, one who is not attempting to enforce any provision of the trust deed securing his bonds, one who is not attempting to persuade the court to manage merely the property conveyed to the trustee to secure him and other bondholders, but rather as a creditor interested in preventing insolvency and correcting certain alleged abuses and actions of waste upon the part of the company and its directors, we are met with the further defect that such a creditor, where contest is made by defendant, cannot maintain a suit for the segregation of corporate property and the appointment of a receiver thereof. Even if there were present showing of insolvency this court is powerless, upon a petition of a creditor of such character, to take jurisdiction of the assets of the defendant and administer the same. Thus in Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371, at page 379, 14 S. Ct. 127, 128, 37 L. Ed. 1115, it is said: "The plaintiffs were simple contract creditors of the company. Their claims had not been reduced to judgment, and they had no express lien by mortgage, trust deed, or otherwise. It is the settled law of this court that such creditors cannot come into a court of equity to obtain the seizure of the property of their debtor, and its application to the satisfaction of their claims, and this notwithstanding a statute of the state may authorize such a proceeding in the courts of the state."

There are many cases to said effect, among them being Cates v. Allen, 149 U. S. 451, 13 S. Ct. 883, 977, 37 L. Ed. 804; Pusey & Jones Co. v. Hanssen, 261 U. S. 491, 43 S. Ct. 454, 67 L. Ed. 763.

True it is that there are certain exceptions to this well-established limitation, but plaintiff does not bring himself within any such exception. Consequently he may not maintain this suit in the capacity of a simple contract creditor under the showing made.

■ The bill of complaint is silent, furthermore, as to when plaintiff became a creditor of defendant. It is properly urged by the defendant that a creditor may not complain of alleged mismanagement prior to his becoming a creditor. In his prayer for relief he must rely upon what occurs after he becomes a creditor and upon what is being done at the time he presents his prayer for relief. Consequently the bill of complaint is defective, in that it appears from the face that plaintiff's bonds were issued in 1926 and that plaintiff seeks to set up cause of complaint occurring prior thereto. This technical defect likewise is fatal upon motion to dismiss.

■ Various other questions have been discussed by counsel, including the assertion that the present bill is defective, in that it appears that its essential and only purpose is the appointment of a receiver. Courts will not recognize bills merely for the appointment of receivers, but such applications must be ancillary to prayers for main relief. As said in Zuber v. Micmac Gold Mining Co. (C. C.) 180 F. 625, at page 627: "A receivership cannot be held by this court to be final relief; and it cannot be made final by the suggestion that the receivers may bring suits, and in that way obtain some ultimate relief. The purpose of a receivership in equity is to be ancillary to, and in aid of, the primary object of the litigation. The final relief sought by the bill cannot be made contingent upon the incidental relief of a receivership."

■ Consequently the bill is defective in not making clear any essential purpose other than the appointment of receiver.

Accordingly, it will be the order of the court that the motion for dismissal be allowed.