Argued January 26; affirmed April 6; rehearing denied May 11;
application for stay of execution denied May 25, 1943

# SCOTT v. PLATT
(135 P. (2d) 769, 137 P. (2d) 975)

Before Belt, Acting Chief Justice, and Rossman, Kelly, Lusk, Brand and Hay, Associate Justices.

*Wilber Henderson,* of Portland (Platt, Henderson, Warner & Cram, of Portland, on the brief) for appellant.

*W. J. Prendergast, Jr.,* and *David Weinstein,* both of Portland (Leo Levenson, of Portland, on the brief) for respondent.

This is an action to recover on four matured interest-bearing bonds executed under date of June 1, 1925, by Harrison G. Platt and the defendant and appellant, Robert Treat Platt. Both makers were sued, but only the defendant, Robert Treat Platt, was served with summons or appeared. Judgment in a trial before the court without a jury went against him, and he has appealed.

The bonds are in the following form:

"Number M 31       Number M 31
### UNITED STATES OF AMERICA
### STATE OF OREGON
### PLATT BUILDING
### FIRST MORTGAGE
### SIX AND ONE-FOURTH PER CENT
### TWENTY YEAR SERIAL GOLD BOND
"HARRISON G. PLATT AND ROBERT TREAT PLATT, for value received, acknowledge themselves and each of themselves to be indebted to the bearer in the sum of
### ONE THOUSAND DOLLARS
($1000.00), which sum the said Harrison G. Platt and Robert Treat Platt and each of them hereby promises to pay to bearer, or if registered, to the registered holder of this bond, at the office of Title and Trust Company in the City of Portland, Oregon, hereinafter called 'Trustee', on the First day of June, 1936, together with interest thereon at the rate of Six and One-Fourth per cent per annum from June 1, 1925, payable semi-annually at the office of said Trustee in Portland, Oregon, on the First days of June and December of each year, upon surrender of the interest coupons hereunto attached as they severally mature.

"Both the principal and interest above mentioned are payable only in gold coin of the United States of America of the present standard of weight

and fineness, or its equivalent in lawful money of the United States of America, without deduction for any tax or taxes or Governmental charges which may be imposed thereon by any present or future law of the United States of America, or any State, County or Municipality therein, and which the said Harrison G. Platt and Robert Treat Platt or Trustee may be required or permitted to pay or to deduct or to retain therefrom except Estate or Inheritance Taxes and Income Taxes on the interest of this bond, but the said Harrison G. Platt and Robert Treat Platt will pay the normal Federal Income Tax upon said interest not exceeding a rate of Two (2) per cent per annum, which may become payable to the United States by any holder hereof under any existing or future Act of Congress. This bond is subject to call and redemption at the option of the said Harrison G. Platt and Robert Treat Platt upon Thirty (30) days' written notice to the Trustee on any interest payment date before its fixed maturity in the time and manner and at the rate and upon the terms provided in said deed of trust. If called prior to Midnight of May 31, 1930, and before its fixed maturity, this bond shall be redeemed at One Hundred Two and One-Half (102½) per centum of its face value, with accrued interest. If called after Midnight of May 31, 1930, and before its fixed maturity, this bond shall be redeemed at One Hundred Two (102) per centum of its face value with accrued interest. This bond is one of a series numbered M 1 to M 104, both inclusive, and D 1 to D 123, both inclusive, and C 1 to C 95, both inclusive, of like tenor except as to their principal amounts and dates of maturity and rate of interest, said bonds maturing serially from two to twenty years after date, the respective dates of maturity and principal amounts of all of said bonds being set forth in the mortgage or deed of trust herein referred to, the aggregate amount of said bonds being the principal sum of One Hundred and Seventy-Five Thousand Dollars ($175,-

000), the whole whereof and interest are secured by a first mortgage or deed of trust of even date herewith executed by the said Harrison G. Platt and Robert Treat Platt to the Trustee, to which reference is hereby made for the statement of the property conveyed to the Trustee, the extent of the security, the rights of the holders of said bonds and the conditions upon which said bonds are issued. This bond shall pass by delivery unless registered in the owner's name upon the books of the said Trustee in the manner provided by said mortgage or deed of trust; such registry, however, shall not affect the negotiability of the coupons hereto attached, which when due and detached from this bond shall continue to be transferable by delivery. This bond is not obligatory for any purpose until the Trustees' certificate endorsed thereon shall have been signed by said Trustee.

"Documentary Internal Revenue Stamps in the amount required by law properly cancelled are attached to the recorded deed of trust securing this issue.

"IN WITNESS WHEREOF, said Harrison G. Platt and Robert Treat Platt have hereunto subscribed their names and have caused their facsimile signatures to be placed upon the attached coupons on this First day of June, 1925.

"(Signed) HARRISON G. PLATT

"(Signed) ROBERT TREAT PLATT"

The defendant in his answer, after certain admissions and denials of the allegations of the complaint, in substance set up the following facts as an affirmative answer and plea in abatement:

On June 1, 1925, the Platts and Title and Trust Company, a corporation, made and executed an indenture which was duly recorded in Multnomah County, Oregon, on June 5, 1925, and by the terms of which

the Platts, as mortgagors, conveyed to Title and Trust Company, Trustee, as security for the payment of an indebtedness in the sum of $175,000, to be evidenced by bonds of the mortgagors, a ninety-nine year leasehold interest upon certain real property in the city of Portland, together with the building erected thereon, certain personal property in said building, and the rentals from the tenants thereof. Section 2 of Article V of the indenture reads:

"No holder of any bond or coupon secured hereby shall have the right to institute any suit, action or proceeding either at law or in equity for the foreclosure of this instrument, or for the execution of any trust or power hereunder, or for the appointment of a receiver to take possession of the properties embraced hereby, or for any other remedy whatsoever, unless such holder shall previously have given to the Trustee written notice of any event of default, nor unless he also shall have made written request upon the Trustee, and shall have afforded to it a reasonable opportunity either to proceed to exercise the power hereinbefore granted or to proceed in its own name either at law or in equity, nor unless such holder or holders shall offer to the Trustee reasonable security and indemnity against the costs, expenses and liabilities to be incurred in or by reason of the action contemplated and the Trustee shall have neglected to comply with such request within a reasonable time thereafter. Such notification and request are declared to be conditions precedent to the execution of the powers and trusts of this instrument, it being understood, intended and hereby provided that no one or more holders of bonds or coupons secured hereby shall have any right in any manner whatever by his or their action to affect, disturb or prejudice the lien of this indenture or to enforce any right hereunder except in the manner herein provided. In the event of the refusal or failure of

the trustee to act after an event of default and request to act and indemnity as herein provided, then and not otherwise the holders of not less than twenty-five per cent of the bonds then outstanding shall be authorized to institute foreclosure or other legal proceedings. All proceedings which shall be instituted to enforce the lien of this instrument shall be for the equal benefit of all holders of such outstanding bonds and coupons.''

Simultaneously with the execution of the indenture the Platts issued the bonds sued upon, together with others of like tenor, except as to their principal amounts and dates of maturity and rates of interest, all aggregating an indebtedness in the amount of $175,000, of which bonds in the amount of approximately $143,800 are outstanding. The plaintiff, it is alleged, has not complied with the conditions precedent to the institution of an action stipulated in Section 2 of Article V of the indenture above set forth, and is not the owner of twenty-five per cent of the bonds outstanding.

The plaintiff demurred to the affirmative answer and plea in abatement, and the court sustained the demurrer. This ruling is the basis of the principal, and, as we view the case, the only assignment of error which calls for discussion.

LUSK, J. The question for decision is whether the provisions of Section 2, Article V, of the indenture, bind the plaintiff so as to bar him from maintaining this action at law to recover a personal judgment against the defendant upon bonds owned and held by the plaintiff and long since in default as to principal and interest, it being conceded that the plaintiff has not met the requirements of that clause. These re-

quirements are, in brief, that before bringing a suit in equity, action at law, or other proceeding, a bond-holder shall first give the trustee written notice of an event of default, and a written request and reasonable opportunity to the trustee to proceed at law or equity in his own name, and that he shall offer to the trustee reasonable security and indemnity against the costs and expenses and liabilities to be incurred by reason of the contemplated action. It is further provided that in the event of the trustee's failure or refusal to act, the holders of not less than twenty-five per cent of the bonds then outstanding must join in the institution of foreclosure or other legal proceedings.

Before stating our views upon what we deem the controlling consideration in the case, notice will be taken of an assertion in the plaintiff's brief that the defendant failed to prove that there is now any security for the bonded indebtedness, and that in fact the lease which constituted the security has been forfeited. Were this fact before us our problem would be comparatively simple, and we would be spared the futility of passing upon a moot question, for the mortgagors have said in Section 2, Article V, of the indenture, after setting forth the conditions precedent to suit or action:

"* * * it being understood, intended and hereby provided that no one or more holders of bonds or coupons secured hereby shall have any right in any manner whatever by his or their action to affect, disturb or prejudice the lien of this indenture, or to enforce any right hereunder except in the manner herein provided."

Assuming—what is at the least a debatable proposition—that an action at law by a single bond-holder would affect, disturb or prejudice the lien of the

mortgage (see McClelland and Fisher, Law of Corporate Mortgage Bond Issues, 137, and cases cited in note 92), yet, obviously, if there is no longer any security there is no lien to be affected, disturbed or prejudiced. Neither in that event would there be a trustee entitled to notice of default, a reasonable opportunity to sue, and an offer of indemnity and security against cost, etc. In short, there would be no indenture, and the assumed state of facts would render the limitations on the right to sue, whatever they may include, *functus officio*. But we cannot assume that the ninety-nine year lease has ceased to stand as security for the bonds, and we think that the burden of proving that fact, as an excuse for failure to comply with the stipulations of Section 2, Article V—if otherwise applicable—is upon the plaintiff. *Central West Public Service Co. v. Craig,* (C.C.A. 8) 70 Fed. (2d) 427, 434; *Rodman v. Richfield Oil Co.,* (C.C.A. 9) 66 Fed. (2d) 244, 251; *Home Mortgage Co. v. Ramsey,* (C.C.A. 4) 49 Fed. (2d) 738; *Harvey v. Illinois Power & Light Corp.,* 3 Fed. Supp. 489, 491.

■ Neither can we take judicial notice of the facts claimed to have been established in *Title & Trust Co. v. Durkheimer,* 155 Or. 427, 63 P. (2d) 909, 64 P. (2d) 834, since that was a cause between other parties: *Oden v. Oden,* 157 Or. 73, 76, 69 P. (2d) 967.

Restrictions on the rights of bondholders, sometimes called "no-action clauses," imported into the bonds by reference therein to a collateral agreement, usually a mortgage, have come frequently before the courts with inharmonious results. See, Annotation 108 A. L. R. 88; 27 Col. L. Rev. 443; 33 Mich. L. Rev. 604; 83 Pa. L. Rev. 679; 41 Yale L. J. 810; 2 John Marshall L. Q. 172; 8 Duke B. A. J. 93. Some courts, particularly

the federal courts, manifest a disposition to construe such provisons as bringing the bondholders into contractual relations, one with another, so that individual bondholders may be prevented "from pursuing an individual course of action, and thus harassing their common debtor, and jeopardizing the fund provided for the common benefit", *Allan v. Moline Plow Co.*, (C.C.A. 8) 14 Fed. (2d) 912; or, as it has been otherwise put, so as "to restrain any inclination the minority, or an individual holder, might have at a critical moment in the financial affairs of the issuing corporation when the majority might agree to leniency, to upset the apple cart", 2 Jones, Bonds and Bond Securities, 289, § 811. On the other hand, courts taking the contrary view have been accused of being too solicitous of the rights of the bondholders, and the criticism was made of one court's decision in favor of the right of an individual action at law that "the real rationale for the court's arbitrary and rigid construction of the bond reference perhaps might lie in the prevalent desire of the courts, because of the economic stress of the times, to grasp even *minutiae* in the endeavor to favor *bona fide* holders of bonds of defaulting corporations." 83 Pa. L. Rev. 680, referring to *Oswianza v. Wengler & Mandell*, 358 Ill. 302, 193 N. E. 123.

It should be observed in passing that the fact that the bonds here sued upon were issued by natural persons and not by a corporation, of course, in no way affects the matter.

██ The question in thisc lass of cases is whether the restrictive provisions properly construed are intended to prevent individual actions at law or whether they merely circumscribe the rights of the bondholders

with respect to the security afforded by the collateral agreement. That question may involve consideration both of the language of the bond and that of the collateral agreement; but always it must first be determined whether the bond itself, by appropriate provisions, gives adequate notice to the holder that his right to sue at law is curtailed by the provisions of another instrument. If it does not, there the inquiry ends. It is a question, as we view it, of the interpretation of language, upon which the court should call to its aid the ordinary applicable rules of construction; and may, indeed, consider the object which it may be supposed was intended to be accomplished by the parties, but should not be influenced by any unwarranted interest in the fortunes of a defaulting debtor on the one hand or the necessities of a bondholder on the other. It may be good public policy to insist upon unity of action by bondholders, but, unless an investor is put on notice that that is one of the conditions of his contract, we are not persuaded that a court should visit upon him the consequences of such a policy.

As a general rule, and in the absence of a prohibitory statute or an express stipulation to the contrary, an individual holder may maintain an independent action at law on a corporate bond or coupon if it is not paid at maturity, even though it is secured by a mortgage or trust deed containing general provisions for a mode of collection or foreclosure in case of default. 13 Am. Jur., Corporations, 851, § 863; *Kimber v. Gunnell Mining & Milling Co.*, 126 Fed. 137, 138. A mere general reference in a bond to a mortgage securing its payment will not suffice to incorporate into the bond restrictions contained in the mortgage upon the common law right of the holder to bring action upon

it after default; *Guilford v. Minn. S. Ste. M. & A. Ry. Co.,* 48 Minn. 560, 51 N. W. 658, 31 Am. St. Rep. 694; *Kimber v. Gunnell Mining & Milling Co.,* supra Cf. *Page v. Ford,* 65 Or. 450, 131 P. 1013, 45 L. R. A. (N. S.) 247, Ann. Cas. 1915A, 1048. On the contrary, the bond itself must, in apt language, refer to the mortgage in such a way as to bring home notice to the holder that restrictive provisions of that character are to be found in the mortgage. To accomplish this object, such references may not be obscure or ambiguous, but must either expressly or by necessary implication refer to the clause of limitation, and doubts and uncertainties will be resolved against the one who prepared and put out the bond and in favor of the holder thereof.

"A bond consists of a direct obligation of the issuing corporation to the holder for the payment of a sum of money by the corporation to the holder and vests in the holder the subsidiary and co-existing benefit of the security of a mortgage lien represented by the indenture made between the issuing corporation and the trustee. It would seem that the covenant of payment in the bonds logically should be enforceable by the bondholder, while the security represented by the mortgage should be enforceable in the first instance by the trustee.

"Such fundamental right to sue upon a bond is of too high a character to be taken away by implication from a mortgage given simultaneously for the better security of the bonds. It can be done only by express statement directly prohibiting the right to sue, and limitations on the bondholders' right to foreclose will not be extended to prevent an action at law on the bonds." McClelland and Fisher, Law of Corporate Mortgage Bond Issues, 136.

"That normal right of an owner of a bond in default is not subject to destruction by implication but continues to exist as a legal incident of the

promise unless there is definite language to the contrary in the bond, or which is incorporated in the bond by reference to another instrument in so plain a way that the restriction is a part of the bond itself." *Dunham v. Omaha & Council Bluffs Street Ry. Co.* (C.C.A. 2) 106 Fed. (2d) 1.

See, to the same effect: 13 Am. Jur. 851, § 863; 11 C. J. S., Bonds, 466, § 99; Stevens on Corporations, 763, § 189; *Reetz v. Pontiac Realty Co.*, 316 Mo. 1257, 293 S. W. 382; *Bartol v. The Gottlieb-Bauernschmidt-Straus Brewing Co.*, 129 Md. 32, 98 Atl. 286; *Fleming v. F. & M. R. R. Co.*, 72 W. Va. 835, 79 S. E. 826, 49 L. R. A. (N. S.) 155, Ann. Cas. 1915D, 978; *Cunningham v. Pressed Steel Car Co.*, 238 App. Div. 624, 265 N. Y. S. 256, aff. 263 N. Y. 671, 189 N. E. 750; *Halle v. Van Sweringen Corp.*, 37 Del. 491, 185 Atl. 236; *Florida National Bank v. Jefferson Standard Life Ins. Co.*, 123 Fla. 525, 167 So. 378; Id., 125 Fla. 386, 169 So. 729, 108 A. L. R. 77; *Enoch v. Brandon*, 249 N. Y. 263, 164 N. E. 45; *Bullowa v. Thermoid Co.*, 114 N. J. L. 205, 176 Atl. 596; *Manning v. Norfolk Southern Ry. Co.*, 29 Fed. 838; *Mendelson v. Realty Mortgage Corp.*, 257 Mich. 442, 241 N. W. 154.

It must first be determined, therefore, whether the reference to the mortgage in the bonds here sued upon is sufficiently explicit to meet the test of these authorities. Each bond contains an unqualified promise to pay a sum of money on a day named followed by the statement that it is one of a series aggregating the principal sum of $175,000 "secured by a first mortgage or deed of trust of even date herewith executed by the said Harrison G. Platt and Robert Treat Platt to the Trustee, to which reference is hereby made for the statement of the property conveyed to the

Trustee, the extent of the security, the rights of the holders of said bonds and the condition upon which said bonds are issued.''

■ The effect to be given language of that sort is thus stated in McClelland and Fisher, *ibid.,* p. 138:

"If the bonds by their provisions merely refer to the mortgage for a description of the property mortgaged, the nature and extent of the security and the rights of the parties, such a reference does not put the bondholder upon inquiry as to the existence of conditions in the mortgage limiting his right to maintain an action at law upon his bond after non-payment. Accordingly, a provision of the mortgage to the effect that no action can be brought by the bondholders to foreclose the mortgage lien or to enforce any rights thereunder will not prevent an action by the bondholders for principal of and interest upon corporate bonds since the bondholder was not by the provisions of the bond itself referred to the restrictions on his otherwise unconditional promise.''

Supporting this view are the following cases, most of which have been cited by the plaintiff: *Enoch v. Brandon,* supra; *Cunningham v. Pressed Steel Car Co.,* supra; *Hibbs v. Brown,* 190 N. Y. 167, 82 N. E. 1108; *Perry v. Norddeutscher Lloyd,* 150 Misc. 73, 268 N. Y. S. 525; *Lubin v. Pressed Steel Car Co.,* 146 Misc. 462, 263 N. Y. S. 433; *Guardian Depositors Corp. v. David Stott Flour Mills, Inc.,* 291 Mich. 180, 289 N. W. 122; *Weber v. Keith Railway Equipment Co.,* 248 Ill. App. 258; *Halle v. Van Sweringen Corp.,* supra.

Other cases holding the reference clause insufficient cannot be said fully to sustain the plaintiff's position, because, by the reference, the holder of the bond is specifically directed to rights under the col-

lateral agreement rather than under the bond: *General Investment Co. v. Interborough Rapid Transit Co.,* 200 App. Div. 794, 193 N. Y. S. 903; *Brown v. Michigan R. Co.,* 124 Misc. 630, 207 N. Y. S. 630; *Bank of California v. National City Co.,* 138 Wash. 517, 244 P. 690; while the case of *Oswianza v. Wengler & Mandell,* supra, where a clause in the bonds made them "subject to" all the provisions of the trust deed "with the same effect as if said trust deed were herein set forth", went much further in deciding that the bondholder was not put on notice of the provisions in the mortgage affecting his right to bring an individual action on the bond than is necessary to go in this case. See, also, *Cummings v. Michigan-Lake Building Corp.,* 277 Ill. App. 470.

In some of the cases the question was whether the bonds were negotiable instruments, it being contended that a reference to a mortgage was effective to incorporate in the bonds provisions contained in the mortgage which conditioned the unqualified promise to pay and thereby destroyed negotiability. The question in these cases, as here, was as to the sufficiency of the words of reference in the bond to put the holder on notice of such conditions. They are therefore authority for our consideration. The leading case is *Enoch v. Brandon,* supra, where the court, in sustaining the negotiable character of the bonds, passed upon the effect of the following provision referring to a mortgage by which the bonds were secured:

> "To which reference is hereby made for a description of the property mortgaged and pledged, the nature and extent of the security, the rights of the holders of the bonds with respect thereto, the manner in which notice may be given to such holders, and the terms and conditions under which said bonds are issued and secured."

The court, after stating "where the meaning is doubtful, we must adopt the construction most favorable to the bondholder", said:

"We hold that here there is no modification of the promise to pay, made in explicit terms. The provisions all have to do with the trust mortgage. They refer to the rights conferred by it upon the bondholders and limit and explain those rights. They are so linked together as to indicate that the obligor was speaking solely of the security. A purchaser, scanning the bonds, would have the same thought. It would never occur to him that, when November 1, 1941, arrived, because of something contained in the mortgage he might be unable to collect the amount due him. He would interpret the statement that the bonds were secured by, and entitled to the benefits and subject to the provisions of, the mortgage, as meaning that a foreclosure or other relief might be had thereunder only subject to its provisions. He would see that reference to it is also made to determine the terms and conditions under which the bonds are issued and secured. Again, it would mean to him, as it means to us, that only by turning to the mortgage might he discover the precise nature of the lien he is to obtain. He would see that the bonds were to be issued, not only upon the general credit of the corporation, but upon the faith of some collateral mortgage. To it he must go, if further knowledge as to this security is desired."

Turning now to cases cited by the defendant, it should first be noticed that some are suits to enforce rights arising under the mortgage or indenture with respect to the security, and they may be put out of view as without bearing on the question before us. See, *Central West Coast Public Service Co. v. Craig*, supra; *Harvey v. Illinois Power & Light Corp.*, supra;

*McGeorge v. Big Stone Gap Improvement Co.,* 57 Fed. 262; *Rodman v. Richfield Oil Co.,* supra; *Title & Trust Co. v. Security Buildings Corp.,* 129 Or. 262, 277 P. 85; *General Electric Co. v. LaGrande Edison Electric Co.,* (C.C.A. 9) 87 Fed. 590.

There are other cases distinguishable because the reference clause is so worded as either to embrace clearly all the provisions of the collateral instrument, as where the bond is made ''subject to'' the conditions and terms of the mortgage, *Muren v. Southern Coal & Mining Co.,* 177 Mo. App. 600, 160 S. W. 835; *Hull v. Angus,* 60 Or. 95, 118 P. 284; *Old Colony Trust Co. v. Stumpel,* 247 N. Y. 538, 161 N. E. 173; *Lidgerwood v. Hale & Kilburn Mfg. Co.,* (D. C.) 47 Fed. (2d) 318; or because the reference clause, in express terms, free from ambiguity, specifically indicates the existence of conditions respecting the right of action on the bond itself as distinguished from the security. *Allan v. Moline Plow Co.,* supra; *Crosthwaite v. Moline Plow Co.,* 298 Fed. 466; *Craig v. Consolidated Cement Corp.,* (C.C.A. 10) 69 Fed. (2d) 613; *Dunham v. Omaha & Council Bluffs Street Ry. Co.,* (C.C.A. 2) 106 Fed. (2d) 1; *Collier v. E. C. Miller Cedar Lumber Co.,* 13 Wash. (2d) 201, 124 P. (2d) 555; *Moody v. Pacific Steamship Co.,* 174 Wash. 256, 24 P. (2d) 609.

*Barker v. Utah-Idaho Central Railway Co.,* 57 Utah 494, 195 P. 635, does not support the defendant's position because the decision was based upon a statute which, in effect, prevented action prior to foreclosure upon an obligation secured by mortgage upon real or personal properties. See, § § 7230, 7231, Compiled Laws Utah 1917.

*Title & Trust Co. v. Security Buildings Corp.,* supra, is specially relied on by the defendant. The reference clause there read:

> "For a description of the property mortgaged, the nature and extent of the security and rights of the holders of said bonds, and of 'The Company' and 'The Corporate Guarantor', 'The Individual Guarantor' and 'The Trustee' reference is hereby made to said mortgage."

The court said (129 Or. p. 278) that the reference was "sufficient to import the appropriate provisions of the trust agreement into the bonds", but the suit was to foreclose the mortgage securing the bonds and the appropriate provisions of which the court spoke related to the power of the trustee under the mortgage to accelerate the maturity of the entire debt. The case was not concerned with the right of an individual holder to bring an action on a bond.

Of the cases to which the defendant has called our attention *McAdoo v. Oregon City Mfg. Co.,* (C.C.A. 9) 71 Fed. (2d) 879, is in point and is authority for his position. The reference clause in the bond read:

> "To which reference is hereby made for the terms and conditions under which this note is issued, the covenants of the maker, and the rights of the holder hereof."

The court held that the provision charged the holders of the notes with notice of all the terms of the trust agreement, which included provisions designed to prevent action by the noteholders until certain conditions precedent had been complied with. It appeared that the defendant company, being unable to pay certain of the notes about to mature, had effected a plan of reorganization to which the holder of approximately

ninety per cent of the outstanding notes had acceded, while the plaintiff was the sole recalcitrant. The court said:

"The evident purpose of the agreement in the instant case was to prevent any individual note holder from securing an advantage or preference over the others. * * * A unity of action and rights was intended, as under the agreement the trustee's declaration of default as to any single note accelerated the due date of all the notes."

Our conclusion from a study of these and many other decisions is that the language of the bond under consideration ought not to be so construed as to neutralize, qualify, or take back the makers' unconditional promise to pay written into the instrument, but that it means, and would be taken by a purchaser to mean, that he might go to the indenture for a description of the security and his rights as a bondholder with respect to the security. *Enoch v. Brandon,* supra. The most that can be said for the defendant's position is that the words, "the rights of the holders of said bonds and the conditions upon which said bonds are issued", in the context in which they are employed, are ambiguous, and, if that be so, doubts concerning their meaning must be resolved in favor of the holder. It would have been a simple matter, had it been the intention to give notice of restrictions on the right of a holder to bring action on the bond itself, to incorporate in the reference clause language which would have left such intention free from doubt, as was done in *Moody v. Pacific Steamship Co.,* supra, where the bond provided: "The holder of this bond shall have no right of action thereon or under the said Mortgage, except as provided in that instrument." The promise to pay is plain enough, and those who chose the lan-

guage and put the bonds on the market should rightly be held to the duty of making equally plain an intention to pare down that promise and the legal rights consequent upon the failure to fulfill it.

■ Bonds of this character are placed upon the market and dealt with as negotiable instruments: *Guilford v. Minn. S. Ste. M. & A. Ry. Co.,* supra; *Cunningham v. Pressed Steel Car Co.,* supra; 27 Col. L. Rev. 447; and it is the policy of the law to resolve all doubts in favor of their negotiability: *Mendelson v. Realty Mortgage Corp.,* supra; 10 C. J. S., Bills and Notes, 479, § 43; 7 Am. Jur., Bills and Notes 814, § 48; 2 Jones, *ibid.,* 126, § 677; and see *Page v. Ford,* supra, 65 Or. at p. 463. The bonds here sued upon are upon their face negotiable and the intention that they should be so regarded by the purchasing public is manifested by the following provision:

"This bond shall pass by delivery unless registered in the owner's name upon the books of the said Trustee in the manner provided by said mortgage or deed of trust; such registry, however, shall not affect the negotiability of the coupons hereto attached, which when due and detached from this bond shall continue to be transferable by delivery."

■ Any other interpretation than that which we have adopted would destroy the negotiability of the bonds, a result not to be desired and one which we think was not contemplated either by those who issued or those who bought and sold them. See *Enoch v. Brandon,* supra; *Paepcke v. Paine,* 253 Mich. 636, 235 N. W. 871, 75 A. L. R. 1205; *Pflueger v. Broadway Trust & Savings Bank,* 351 Ill. 170, 175, 184 N. E. 318; *Sturgis National Bank v. Harris Trust & Savings Bank,* 351 Ill. 465, 184 N. E. 589; 7 Am. Jur., Bills and Notes, 895,

§ 187; McClelland and Fisher, *ibid.*, 145; 2 Jones, *ibid.*, 120, § 676.

For the reasons stated we are of the opinion that the court ruled correctly in sustaining the demurrer to the affirmative answer and plea in abatement, and the judgment is, therefore, affirmed.

---

Application for stay of execution denied May 25, 1943

### ON APPLICATION FOR STAY OF EXECUTION
(137 P.(2d) 975)

LUSK, J. The appellant has filed an application for a stay of the execution and enforcement of the judgment herein and the recall of the mandate, to enable him to apply for and obtain a writ of certiorari from the Supreme Court. Such application is authorized by Title 28, § 350, U. S. C. A., which provides in part:

> "In any case in which the final judgment or decree of any court is subject to review by the Supreme Court on writ of certiorari, the execution and enforcement of such judgment or decree may be stayed for a reasonable time to enable the party aggrieved to apply for and obtain a writ of certiorari from the Supreme Court."

Section 344 (b), *ibid.*, authorizes the Supreme Court to have certified to it, by certiorari, for review and determination a cause wherein a final judgment or decree has been rendered or passed by the highest court of a state, and includes cases "where any title, right, privilege, or immunity is specially set up or claimed by either party under the Constitution".

In the application now under consideration the petitioner avers that he seeks a review of our decision "and especially in relation to the 5th and 14th amend-

ments to the Constitution to the property rights of the appellant involved in this action.''

■ The application is addressed wholly to our discretion. *Magnum Import Company v. Houbigant, Inc.,* 262 U. S. 159, 43 S. Ct. 531, 67 L. Ed. 922. Mr. Chief Justice Taft, referring in that case to a similar application to the United States Circuit Court of Appeals, said:

"That court is in a position to judge, first, whether the case is one likely, under our practice, to be taken up by us on certiorari; and, second, whether the balance of convenience requires a suspension of its decree and a withholding of its mandate."

The court added:

"These remarks, of course, apply also to applications for certiorari to review judgments and decrees of the highest courts of states."

■ The whole subject is reviewed at length in *Williams v. Keyes,* 135 Fla. 769, 810, 186 So. 250, 266, where it is said:

"The necessary prerequisite for such a review is exemplification of a federal question that was affirmatively presented, that its decision was necessary to the determination of the cause, that it was actually decided or that the judgment as rendered could not have been so without deciding it. Adams v. Russell, 229 U. S. 353, 33 S. Ct. 846, 57 L. Ed. 1224; Palmer v. State of Ohio, 248 U. S. 32, 39 S. Ct. 16, 63 L. Ed. 108; Chicago, R. I. & P. Co. v. Maucher, 248 U. S. 359, 39 S. Ct. 108, 63 L. Ed. 294."

■ None of these things are found in this case. It is an action to recover the principal sum and interest of bonds issued by the appellant and another. The sole defense was that certain provisions of the bonds

and of a collateral indenture, executed to secure their payment, were a bar to the maintenance of the action. We construed the provisions relied on by the appellant adversely to him and held that the action would lie, in an opinion rendered April 6, 1943. Thereafter the appellant filed a petition for rehearing, which was denied without opinion on May 11, 1943. From the filing of the complaint to the denial of the petition for rehearing, there has not been anywhere in the record a suggestion of a federal question, and it is difficult to see how there could have been, for the case is one of purely local state law, involving nothing but the construction of a contract, entered into in this state and governed by its laws. The Supreme Court is not authorized to interfere with a state court's decision on a question of that kind. *American Railway Express Company v. Kentucky,* 273 U. S. 269, 47 S. Ct. 353, 71 L. Ed. 639.

■■■■■ The suggestion of a federal question in the present application, even though it were otherwise sufficient, is too vague and indefinite to meet the requirements of the statute, since it does not appear "from the averments of fact upon which the claim must depend that the question is one real and substantial". *Consolidated Turnpike Company v. Norfolk & Ocean View Railway Company,* 228 U. S. 596, 33 S. Ct. 605, 57 L. Ed. 982. And, indeed, there are no averments of fact at all. In any event, the claim comes too late, for we have made our final disposition of the case and have no jurisdiction to pass upon the supposed federal question, even though we were so inclined. Even when the federal question is first presented by a petition for a rehearing, the Supreme Court of the United States will not take jurisdiction "unless that question was considered, and passed on adversely by the court".

*Montana v. Rice,* 204 U. S. 291, 27 S. Ct. 281, 51 L. Ed. 490, and other cases cited in U. S. C. A., *ibid.,* p. 288, Note 227; or "the grounds of the decision supply a new and unexpected basis for a claim by the defeated party of the denial of a federal right". *Great Northern Railway Co. v. Sunburst Oil & Refining Co.,* 287 U. S. 358, 367, 53 S. Ct. 145, 77 L. Ed. 360, 85 A. L. R. 254.

It thus appears that it is highly improbable, if not, as we should suppose, in law impossible, that the Supreme Court will look with favor on the appellant's petition for certiorari. As has been shown, the court does not grant a stay of execution on an application of this kind as a matter of course. The considerations which should guide our discretion have been stated for us by the highest authority, and we should be disposed to apply them liberally in favor of the application wherever there is any reasonable ground for believing that the Supreme Court might take jurisdiction of the cause. None exists here, and the application is therefore denied.