PERRY, APPELLEE, *v.* THE DARLINGTON FIREPROOFING CO., APPELLANT.

(No. 2177—Decided February 2, 1945.)

Mr. *F. E. Hunter,* for appellee.
Mr. *Sidney L. Geiger,* for appellant.

SHERICK, J. Plaintiff's third amended petition recites that he is the owner and bearer of three first mortgage gold bonds, executed on July 15, 1927, and made payable to bearer. Each calls for the payment of $500 with 7% interest. It is stated that part of the interest coupons have been paid, but that no part of the principal has been paid; that demand has been made for payment of the principal and interest from

January 15, 1932; and that payment has been refused.

It is further averred that these bonds were issued, and were accepted by him subject to all the terms, provisions and conditions contained in the mortgage, referred to in the bonds, relating to the foreclosure of the mortgage; and that he does not seek foreclosure of the mortgage, but asks that the principal sum and interest due thereon be paid.

Plaintiff further says that the mortgage referred to in the bonds in no way limits his right to sue for the sums due and payable; and that such mortgage provides that "the various rights, powers and remedies provided for by this indenture, shall be construed as cumulative and none of them as exclusive of the others or of any rights or remedies allowed by law." A personal judgment is prayed for. The three bonds and the mortgage are attached to and made a part of the pleading.

The answer of defendant admits practically all of the petition's averments, but avers the fact to be that the trust mortgage limits plaintiff's right to sue. Its second defense avers that plaintiff has failed to perform the prerequisites required by the bond and mortgage. There next follow long excerpts taken from these two instruments, of which we shall have more to say hereinafter. Defendant asks that plaintiff's petition be dismissed.

A jury having been waived, the cause was submitted to the court upon an agreed statement of facts, which adds little to the issues made by the pleadings. It is agreed, however, that the sum due on the bonds amounts to $2,834.37 as of October 4, 1944; that when the action was commenced, $320,000 of bonds were issued and outstanding; that the City Savings Bank & Trust Company of Alliance, Ohio, was trustee for bondholders; that plaintiff made no demand upon it to commence foreclosure or any proceedings; and that 25%

of the bondholders had never made any such demand or request.

The court rendered judgment in plaintiff's favor after a motion for a new trial had been overruled. From that judgment defendant appeals on questions of law and fact, but treats the same as an appeal on questions of law, which of course it properly is. We shall so consider it.

It ought first be said that these three bonds contain an unconditional promise to pay a certain fixed sum on demand, at a fixed time, to bearer, or if they be registered, upon order. The same is true of all interest coupons unpaid and undetached from the bonds. It is recited upon the face of the bonds that "this bond shall pass by delivery unless registered." They have not been registered. It is further stated that "the coupons on this bond shall be negotiable by delivery." The sixth and eighth paragraphs of these bonds are pertinent to the issue. We quote them in full:

"If the company default in the payment of interest which shall mature on any of said bonds secured by said mortgage or in the performance of any of the provisions of said mortgage, the principal sum of this bond may be made due and payable in the manner provided in said mortgage."

"This bond is issued and is accepted and held subject to all the terms, provisions and conditions contained in said mortgage."

The principal sum of one of these three bonds was due and payable on July 15, 1932. The second and third were due and payable on July 15, 1933. The last due coupon on bond one, due July 15, 1932, is undetached and is unpaid. The last three coupons on bonds two and three are undetached and unpaid. We note these facts in order that it may appear that the principal and interest of these bonds are long past due, as a preface to the comment, that the sixth paragraph's purpose

clearly is an acceleration of principal due date if interest coupons are not paid when due, and the procedure to be followed. This clause can therefore have no application to these long overdue bonds.

We reach the conclusion, as did the court in *Enoch* v. *Brandon*, 249 N. Y., 263, 164 N. E., 45, that these bonds are negotiable. They exhibit all the requirements of negotiability. The fact that the eighth paragraph contained within these bonds refers to another instrument, the mortgage indenture, cannot impair their negotiability, unless it clearly appears in explicit language therein, or from unescapable implication therefrom, that they were not to be negotiable, even though the face of the bond states the contrary.

It may be stated as a general rule, as is done in the note appearing in 108 A. L. R., 88, 90, that:

"Reasonable restrictions on the right of action of an individual holder of one or more of a series of corporate bonds or other obligations, either in respect of the obligation or the security or of both, have generally been held to be valid and enforceable."

Further on it is said, on page 94 thereof, that:

"The construction and application of express restrictions on the right of action of an individual holder of one or more of a series of corporate bonds or other obligations depend largely upon the exact language of the particular restrictive provisions. * * * It has generally been said that restrictions on the right of action of an individual bondholder are to be strictly construed," for the apparent reason that they are restrictive of rights recognized at common law. They are effective only when clear and free from doubt, and are not to be extended by implication, unless such a conclusion is inescapable. The same general rules, supported by a number of authorities, are found stated in 19 Corpus Juris Secundum, 758, Section 1163; and 13 American Jurisprudence, 851, Section 863.

Defendant first directs our attention to the sixth paragraph of the bond, as is hereinbefore quoted, and then to article 10 of the mortgage, which reads:

"Default shall be made in the payment of the principal of any of the bonds, when and as the same shall have become payable, whether at maturity or by declaration of the trustee or otherwise."

This paragraph is followed by other provisions declaring other acts, like failure to pay taxes, to be a default. These default provisions are preceded by these words, "in case one or more of the following events shall happen, that is to say, if," and are followed by this language, "then and in each and every such case of default, and during the continuance thereof, the trustee * * * may enter on the mortgaged premises," and operate the same, and distribute moneys arising therefrom. Clearly this article has to do with corporate displacement and the trustee's entry in case of any default.

But defendant says that articles 11, 12 and 15 must be read in conjunction with article 10 in support of its contention that the mortgage provision takes from plaintiff his common-law right to sue for a personal judgment.

Article 11 provides that in case of default, as defined in article 10, the trustee may, upon request of 25% in amount of the bonds then outstanding declare all outstanding bonds to be due and payable. This is the acceleration clause. It provides what may come to pass, when a default occurs and the trustee has taken possession of the mortgaged premises for the benefit of bondholders.

Article 12 further concerns the happening of an event of default as defined in article 10 and proceeds further to declare that in every such case the trustee may, with or without entry, and upon request of 25% in amount of the bondholders proceed to foreclose the

mortgage and effect a sale and apply the proceeds in the manner directed. Other provisions follow as to what shall and shall not be done in case of sale.

At this point it is well to point out that article 14 contains the provision, quoted by plaintiff in the last clause of his pleading, concerning cumulative remedies.

The first portion of article 15 simply provides that taking of possession of the premises in case of default is not obligatory on the trustee, unless he is indemnified by the bondholders; but that he may act without indemnity if he elected to do so. Defendant lays its greatest stress on the second portion of article 15. It provides that:

"No holder of any bond or coupon hereby secured shall have the right to institute any suit, action, or proceeding at law or in equity for the foreclosure of this indenture, or otherwise upon or in respect to this indenture," without having given notice to the trustee, nor unless 25% in amount of the bondholders have made request upon the trustee to proceed as hereinbefore provided; and that every such notification and request shall be a condition precedent "to any action or right of action for foreclosure, * * * or for any remedy hereunder, it being understood and intended that no one or more holders of bonds or coupons shall have any right in any manner whatever to affect, disturb or prejudice the lien of this indenture by his or their action or to enforce any right hereunder, except in the manner herein provided, and that all proceedings hereunder shall be instituted, had and maintained in the manner herein provided and for the equal benefit of all holders of such outstanding bonds and coupons."

The restrictive provisions of the mortgage, commented upon, are all the so-called "no-action clauses" contained therein. It ought to be clear that they are

concerned with the matter of foreclosure or any action by a bondholder which would impair the lien of the mortgage and which might work a preference to one bondholder and be to the disadvantage of all other holders of outstanding bonds. Their purpose and intent are to protect the lien equitably and ratably for the benefit of all bondholders. Nowhere within the bond or mortgage is it unequivocally stated that a bondholder shall not institute an action for personal judgment upon his matured and unpaid bond. If the purpose had been to deny a bondholder this recognized common-law right, it could have been done in very simple language. The language of both instruments is to the contrary. The borrower several times therein states that its bonds and coupons shall be negotiable by delivery.

The recent case of *Scott* v. *Platt,* 171 Ore., 379, 135 P. (2d), 769, which reviews many earlier authorities, deals with precisely the same question. Article 15 of this mortgage is in almost identical language with that considered by the Oregon court. It was held therein to be ambiguous and ineffectual, and not sufficient to deny the bondholder his unsurrendered right to seek personal judgment. Ohio courts have long recognized that a mortgagee, out of possession, after default has three remedies. One of these is that he may disregard his security and seek personal judgment. The reason is that the mortgage is only security for the obligation. See *Spence* v. *Insurance Co.*, 40 Ohio St., 517, and *Simon* v. *Union Trust Co.*, 126 Ohio St., 346, 185 N. E., 425.

The following statement, found in *Dunham* v. *Omaha & Council Bluffs St. Ry. Co.*, 106 F. (2d), 1, 2, and quoted in *Scott* v. *Platt, supra,* is, we believe, sound in reason and principle:

"That normal right of an owner of a bond in default is not subject to destruction by implication but

continues to exist as a legal incident of the promise unless there is definite language to the contrary in the bond, or which is incorporated in the bond by reference to another instrument in so plain a way that the restriction is a part of the bond itself."

If any such restriction is uncertain, obscure or ambiguous, then any such doubt or uncertainty will be resolved against the maker of the bond and in favor of the bearer thereof.

The judgment must be affirmed.

*Judgment affirmed.*

MONTGOMERY, P. J., and PUTNAM, J., concur.